Mr. Justice STORY
 

 delivered the opinion of the court.
 

 This is a writ of error to the Circuit Court of the United States for the eastern district of Louisiana. The original suit was brought in the state court, against Black alone,- upon an attachment issued by Zacharie, & Company-against'him, he being a citizen, of South Carolina, and nbt resident' in Louisiana; and upon this attachment certain shares of Blaqk, in tire Carrollton Bank, and the Gas Light and Banking Company, in Louisiana, were attached, to answer the' exigency of the writ.' Black appeared in the suit, and caused it to be removed into the Circuit Court. Black, upon his appearance, pleaded that prior to the attáchmeiit he had' assigned the attached stock tó James Chapman, of South Carolina,-by a trust-deed, for the be-' nefit of all his creditors. After the removal ol the suit into the Circuit Court, Chapman filed an intervention, according-to the Louisiana practice,' and became a party to the suit to protect his interest under the trust-deed. In his petition of intervention he asserted his title,- and that he had given'due notice thereof to the Carrollton Bank, • and the Gas Light and Banking Company; and that Zacharie & Co. had due notice thereof before their attachment.
 

 The cause, was tried by a juryupon-the pleadings in the case; and upon the trial it was proved that the assignment was- made by the trust-deed in South Carolina, by Black to Chapmap, on the .28th of April,-1841. The attachment of Zacharie & Co. was made on the 4th of May; 1841, with a full‘knowledge of the assignment. Long before the attachment; the stock in the Carrollton Bank -had been transferred and pledged'to' the Carrollton Bank, for a stock-loan, and was then held by that bank, under that transfer, the .equity'of re
 
 *510
 
 deeming the same only remaining in Black. ■ Ón the 15th of April, 1841, Black had executed a letter of attorney to the cashier of the Gas Light and Banking Company, to transfer the same to the Bank of South Carolina, of which notice was sent on the next day to the Gas Light and Banking Company, and notice was received by the latter on the 22d of April, but owing to some informality in the letter of attorney, the transfer' was not then made, but the paper was sent back to be corrected, the company then agreeing to transfer it when the informality was corrected. The Bank of South Carolina was a holder of the stock, under this power, for value; and of this transaction also Zacharie &. Co. had notice before their attachment.
 

 At the trial, the jury found a verdict for the original plaintiffs, and judgment thereupon passed for them. Two bills of exceptions wer.e taken to the'ruling of the court at the trial, and' upon these exceptions the cause has been brought before this court.
 

 . • It does not seem necessary to recite at large the matters contained in these exceptions. They give rise to two questions, which have been fully argued at the bar, although very inartificially presented in. the record: First, whether at the time of the commencement of the suit of Zacharie & Co. there was any debt due to them, upon which the-attachment could, under the circumstances,-be maintained? Secondly, whether the assignment to Chapman, being made in South . Carolina, and known to' Zacharie & Co. at the time of their attachment, and being, by the laws of South Carolina, a good and valid assignment, is entitled to a priority over the attachment. The latter question, so far as it respected the notice to Zacharie & Co., and the equity of the assignee, is not so precisely put as it is obvious it was intended to be, in the instructions asked by the intervenor. But it is plain, from the qualifications of those instructions suggested by the court, that the court held that the delivery of the stock was not. complete, and that the assignment did not pass the right to the stock to the assignee, unless the transfer was entered' upon-the books of the bánk, notwithstanding the notice; and that the law of Louisiana upon the point was different from that of South Carolina. . In this way only is the verdict at all reconcileable with the admitted state of facts.
 

 In respect to the first question, it is plain to us that there was no debt due to .Zacharie & Co., at the time when the attachment was made. The supposed debt was for the proceeds of a cargo of sugar and molasses, sold by Black on account of Zacharie & Co. Assuming those proceeds to be due and payable, Zacharie & Co. had drawn certain bills of exchange upon Black, which had been accepted by the latter, for the frill amount of those proceeds; and all of these bills - had been negotiated to third persons, and were then outstanding, and three of them were not yet due. It is clear, upon principles of law, that this was a suspension of all right of action in Zacharie & Co., until after those bills had become due and dishonoured, and
 
 *511
 
 were takpn up by Zacharie & Co. It amounted to a new credit to. Black for the. amount of those acceptances, during the running of the bills, and gave Black a complete lien upon those proceeds, for'his indemnity against those acceptances, until they were no longer outstanding after they had been dishonoured. '
 

 Whether the transactions by the drawing and acceptance of these bills amounted to a novation of the debt, which might otherwise be due under the account current.for the saleá of, the sugar and molasses, it is not necessaryto decide; for, assuming that these transactions might be treated as a conditional novation only and not as an absolute novation, it would make, no difference in the conclusion to which we should arrive under the circumstances of this case.
 

 It is true that the statute law of Louisiana allows, in certain cases, an attachment to be maintained upon debts not yet due.. But it is ■ only under very special circumstances; and the present case does not fall within any predicament prescribed by that law. The statute does not apply to debts resting in mere contingency, whether they will ever become .due to the attaching creditor or not; nor to any case except of absconding debtors; and this, therefore, is a cáse not governed by it. We think, then, that there was error in the ruling of the court -in admitting, that there was a sufficient debt established by the evidence to maintain the attachment.
 

 The other point is one of much greater importance, although in our judgment not attended with any intrinsicdiffieulty. We admit, that the validity of this assignment to pass the right
 
 to
 
 Black in the stock attached' depends upon the law of Louisiana and not upon that • of South Carolina.. From the nature of the stock of a corporation, .which is created by and under the authority of a state, it is necessarily, like every other attribute of the corporation, to be governed by the local law of that state, and not by the local law of any foreign state. And in the present.case, if the local law of Louisiana had prohibited (as we think it had not) any assignment of an equitable interest- in the stock attached, we should not have scrupled to have followed that Jaw. The question is not here, whether the legal interest in the stock passed by the assignment before a transfer .of the -stock upon the books of the corporations; but whether the equitable interest therein, as contradistinguished from the legal interest, did not pass to and .vest in the -assignee by the. law of Louisiana, so as to oust-the right óf any creditor with full notice of the assignment from divesting foe title of the assignee by a subsequent attachment thereof as the property of the debtor. In respect to the Carrollton Bank it is clear that nothing but an -equitable interest could be conveyed or was intended to be conveyed.by the assignment; for the bank already held the legal title as a pledge for a stock loan. In respect to the Gas Light and Banking Company, the interest in the stock had been transferred to the Bank of South Carolina as a .pledge, and the letter of attorney was given to perfect the equitable
 
 *512
 
 title into a legal title by an actual transfer, on the books of the corporation. But, subject to that pledge, the equity was with the consent of the Bank of South Carolina vested in the assignee under the assignment. So that each case presented the saíne general question as to the validity of the equitable title by the law of Louisiana against attaching creditors, having full knowledge of that equity. Out of Louisiana, we believe, that no such question could possibly arise.; -for courts of law, as well as courts of equity, are constantly, in all states where the common law prevails, in the habit of holding a.prior assignment of the equitable interest in stock as superseding the right's of attaching creditors, who attach the same with a fu5 knowledge of the assignment.
 

 Upon full examination of the laws of Louisiana and the decisions of its courts, we see no reason to believe that a different doctrine ’ bn this subject; prevails in that state. It is true that the same dis-tinc'tioñs between legal and equitable rights may not as to the mode of remedy exist in that state, which are recognised in states governed by the common law.; but the same purposes of substantial justice are attained there under similar circumstances as the courts in other states are accustomed to administer in a different form.
 

 There is a marked distinction in the Louisiana law between the. transfer of corporeal things movable, and things incorporeal. In the former a manual tradition of the thing is ordinarily but not universally required to perfect the title. In the case of incorporeal things no such tradition can fake place, and therefore such a delivery, as the thing admits of — a soft of symbolical delivery — :is admitted by the law as a substitute. .There are several articles of the Civil Code of Louisiana bearing directly on this point; but it will be sufficient only to .cite a few óf those which have been relied 'gn by counsel. Art. 2612 declares, “In the transfer of debts, rigifs, or claims, to a third person, the delivery takes place between the ransferrer and transferree by the giving pf the title.” Art. 2613 deciares, “ The transferree is only possessed j as it regards thud persons, after notice has been given to the debtor of the transfer having taken place.” Art. .2456 declares, “The tradition of-the incorporeal rights is to be made either by the delivery of the titles and'of the - act of transfer, or by the use made by the purehaser with the consent oí the seller.” In Bainbridge
 
 v.
 
 Clay, 16 Martin R. 56, the Supreme Court of Louisiana said, “A debt due [by] the defendant on a
 
 fieri facias
 
 cannot as;.to third' .persons completely pass to the assignee unless there be what in-sales of tangible property is called a tradition or delivery; and this is effected as to choses in action by notice of the assignment to the debtor.” . Again, in Babcock
 
 v.
 
 Maltbie, 19 Martin R. 137, the same learned- court said that the. true test, in cases of assignment, is, “ That where, the owner of the property has lost all power over it and cannot change'its destination, ' • the creditors cannot attach.” The same- doctrine was directly'
 
 *513
 
 (affirmed in the recent case of Urie
 
 v.
 
 Stevens, 2 Rob. Louis. Rep. 251. The principles announced in these decisions seem completely to cover the present suit. In the case of the Carrollton Bánk the shares had actually passed to the bank itself'as. a pledge, and nothing but "an equity remained in Black, capable of being transferred, and that was assigned by the deed of assignment to the assignee before the attachment, mid was known to Zacharie & Co. at the time when they made their attachment; and at least as early as the next day it was made known to the bank. So that the creditors had full notice and the bank had full notice; and the creditors could not make a vajid attachment when to their knowledge the property no longer belonged to their debtor. The case, as to the Carrollton Bank falls, then, directly within the principles just' stated. The owner had parted with all his property ih the stock; he had lost all power over it; and he could not change its destination". The. same principles apply,
 
 h fortiori,
 
 to the Gas Light and Banking Company; for there, not- only had the creditors notice of the • assignmeht before their attachment; but.the company also had notice thereof before that period.
 

 It is true that the charters of the Carrollton Bank and of. the Gas Light and Banking Company provide that no transfer of the stock of these corporations shall be valid or effectual until such transfers shall be entered or registered in a book or books to' be kept for that purpose by the corporation. But this is manifestly a regulation designed for the security of the bank itself, and ofthird persons taking transfers of the stock without notice of any prior equitable transfer. It relates to the transfer of the legal title, and not of any equitable interest in the stock subordinate to that title. In the case of the Union Bank of Georgetown
 
 v.
 
 Laird, 2 Wheat. 390, this court took notice of the distinction between the legal and equitable title in -bases of bank-stock, where the.charter of the bank had provided for ■ the mode of transfer. The general construction which has been put upon the charters of other banks containing similar provisions as to the transfer of their' stock, is, that the provisions are designed solely for the safety and security of the bank itself, and of purchasers without notice ; and that as between vendor and vendee a transfer; not in conformity to such provisions, is good to>--pass the equitable title and divest the.véndor of all interest in the .stock. Such are the decisions in the cases of the Bank of Utica
 
 v.
 
 Smalley, 2 Cowen, 777, 778; Gilbert
 
 v.
 
 Manchester Iron Co., 11 Wend. 628; Commercial Bank of Buffalo
 
 v.
 
 Kortwright, 22 Wend. 362; Quiner
 
 v.
 
 The Marblehead Insurance Co., 10 Mass. R. 476; and Sergeant
 
 v.
 
 Franklin Insurance Co., 8 Pick. R. 90.
 

 • We see no reason to doubt that the jurisprudence, of Louisiana adopts a similar interpretation for the purpose of protecting equitable title against the claims of creditors of the transferrer, who have notice of such equitable titles. If it will protect an assignment of
 
 *514
 
 a chose in action against attaching creditors after notice of the assignment given to She debtor, because no title remains in the trans-ferrer, (as we have seen it will,)
 
 a
 
 fortiori, it ought to protect it where the attaching'creditor, himself has notice, since, in justice,die is entitled only to take under his attachment what rightfully remains in the transferrer. In the absence- of any positive" controlling statute or direct adjudication of the courts of Louisiana upon.the very point, in contradiction to the doctrine maintained in other states, ' as one founded
 
 ox aequo et bono
 
 in general justice, we may well presume,, that a state deriving its jurisprudence from the Román’Law, has not foiled to act upon it.
 

 • There is another ground, auxiliary to this last view, which is entitled .to great consideration. It is .well settled as a doctrine 'óf international jurisprudence, that personal property has no locality, and that the law. of the owner’s domicil is to determine the validity of the transfer or alienation thereof, unless there is some positive or customary law of the country where it' is found- to the contrary. This doctrine has,,- in the very late case of the United States ». The United States Bank, (in - June, 1844,) been fully and directly re- - cognised and affirmed by-the Supreme Court of Louisiana, as a part of its own international, jurisprudence; and it was applied in that very case to - support ap assignment made in Pennsylvania, by the Bank of the United States;, to-certain assignees, who were interveners of .goods, debts, credits) and effects, in Louisiana. The court, held, that the assignment, being proved tó be valid and effectual by the, law of Pennsylvania,-, was to be,’deemed equally valid, and effectual to pass the goods), debts, credits, and effects) of the bank, to the assignees in Louisiana, against the attaching creditors,, who had notice of the assigfiment-at the time ofrtheir attachment. The decision turned upon the very doctrine of international jurisprudence just referred to. . So that here we have the high authority of the state court in this very matfef, that théré'is nothing in the'jurisprudence of Louisiana,-Which forbids giving foil effect and validity to an assignment of-debts, credits, .and equities, situate in that state, where the assignment is valid and' effectual by the law of therstate where it is made, so as to oust the rights of attaching creditors who have' due notice thereof. ■ Now, in the case before us, there'-is' plenary evidence that the assignment was valid and effectual, by foe laws,of South C .volina, when and where it wras made, to pass 'foe right to the property in controversy; and that the attaching creditors had notice thereof before their attachment.Was made; so that ifo validity and effect are the same in Louisiana as in South Carolina. It is true that the legal title could not pass without a regular transfer of the stocks-upon the books of the corporation; but it is equally true, that the title to the property, subject to the pledge- thereof, was complete in the assignee, so as to bind the banks'as well as the attaching creditors, after due notice to them respectively. We sue,
 
 *515
 
 -therefore, of (opinion, that the district judge erred in directing the .jury that the delivery of the stock was not complete unléss the transfer was entered upon the books of the banks. That was true as to the.absolute legal title, but-it did not prevent the equitable;title from passing to ana becoming completely vested in the assignee under.and in virtue of.the assignment, so as to bind the attaching creditors, as soon as they had notice, thereof, and in -like'manner the banks, as soon as they had notice thereof.
 

 Upon both grounds^therefore, stated in the exceptions, the judgment of the Circuit Court is reversed, and the cause remanded to that court with directions to award a
 
 venire facias de novo.