STATE INSURANCE COMPANY *vs.* GENNETT and others.

October Term, 1874.

INTERPLEADER—PRACTICE.—If the defendants to a bill of interpleader agree that the bill is properly filed, the complainant is entitled to be dismissed with costs, and, if the case is ripe for decision between the defendants, a final decision will be made; if not, the court will direct an action, an issue, or a reference to ascertain contested facts, as may be best suited to the nature of the case, or leave to the defendants the preparation of the case between them.

STOCK—ASSIGNMENT—ATTACHMENT.—The assignee of stock in an insurance company, by assignment and delivery of the certificate of stock, and notice to the company, has a superior right to that of a subsequent attaching creditor of the assignor, although there be a valid by-law of the company,

embodied in the certificate, that the stock is only transferable on the books of the company, at their office, on surrender of the certificate, the charter containing no provision on the subject of the assignment of the stock.

*D. F. Wilkin*, for Rainey & Co.

*J. A. Cartwright*, for Gennett & Co.

THE CHANCELLOR:—This is a bill of interpleader to compel the defendants, Gennett & Co. and Rainey & Co., to litigate between themselves the title to fifteen shares of stock in the State Insurance Company. The stock originally belonged to one Spencer, and is claimed by Gennett & Co., under attachment, as the property of Spencer, and by Rainey & Co. as assignees of Spencer.

The defendants, in order to a speedy decision of the matters in controversy between them, have agreed to " submit the bill, answers, exhibits, proof, and previous proceedings, at once," to me for final determination. This they may do, the agreement, in effect, conceding that the bill has been properly filed, and that the complainant is entitled to the usual decree of interpleader. *East and West India Dock Co.* v. *Littledale*, 7 Hare, 62 ; *Martinius* v. *Helmuth*, 2 V. & B. 412, note ; *Horton* v. *Baptist Church*, 34 Vt. 317. That decree is that the bill is properly filed, that the complainant is dismissed with costs, and that the defendants interplead. *Rowe* v. *Hoagland*, 3 Halst. Ch. 139. This settles the case, so far as the complainant is concerned, and is usually, in England, accomplished by motion. *Crawford* v. *Fisher*, 1 Hare, 441. If, at the hearing, the case between the defendants is ripe for a decision, the court will decide it, and make a final decree at once. *Condict* v. *King*, 2 Beas. Ch. 383 ; *Hendrickson* v. *Decow*, Sax. .595. If it is not, the court merely decides that the bill is properly filed, dismisses the plaintiff with his costs up to that time, and directs an action, or an issue, or a reference to a master, to ascertain contested facts, as may be best suited to the nature of the case. *City Bank* v. *Bangs*, 2 Paige, 570 ; *Angell* v. *Hadden*, 16 Ves. 202. Or the court may leave it to the defendants to prepare the case

between them as they may be advised, which would be the effect of a general order to interplead.

The agreement of the parties in this case authorizes me to act upon the pleadings and proof. But, without an agreement upon the point, the answers of the defendants are not evidence as against each other. They are only pleadings to raise an issue, and the title of each defendant must, as against the other, be made out by proof. *Judd* v. *Seaver*, 8 Paige, 548. In this case no evidence has been taken to show the assignment of the stock to Rainey & Co., or to prove the consideration of the assignment; nor have the attachment proceedings under which Gennett & Co. claim been put in evidence. It is obvious, therefore, that the cause is not ready for hearing as between the defendants, unless the answers of each be taken as true. The arguments submitted to me take for granted that each side has made out the case as claimed, and this can only be on the supposition that the answers were to be considered severally as true.

Taking it that this is the understanding, the facts are substantially these: Spencer, being then the owner of the stock in controversy, on the 25th of November, 1870, assigned and delivered his certificate of stock to Rainey & Co. "for value received, to wit, for $513." This certificate contains on its face the statement that the stock is only transferable on the books of the company, at their office, on the surrender of the certificate, and there is proof tending to show that a by-law to this effect was adopted by the company. On the 4th of April, 1872, Rainey & Co. wrote to the State Insurance Company advising the company of the assignment of the stock to them, and asking information as to the value of the stock. In the same letter they say that one of Spencer's creditors "has an attachment upon us which will necessitate sale of the stock by the sheriff," adding, "and, being made aware of its value, we shall be better able to protect *his* and our own interest." On the 8th of April, 1872, the president of the insurance

company acknowledged receipt of the foregoing letter.  On the 2d of May, 1872, Rainey & Co. again wrote to the insurance company, repeating " that, in consequence of the attachment, we presume that it will be necessary that it be sold publicly by the sheriff." On the 10th of May, 1872, the secretary of the insurance company notified Rainey & Co. of the attachment of Gennett & Co., which was sued out on the 9th of May, 1872. On the 26th of June, 1872, Spencer executed a power of attorney authorizing the assignment of the stock on the books of the company to Rainey & Co., and the assignment or transfer on the books of the company was afterwards made, " subject to the rights of attaching creditors and others."

It is obvious that this conditional transfer on the books of the company, under the authority given after the attachment of Gennett & Co., cannot affect the rights of Gennett & Co. The creditor of Spencer, who, it is said in the letters of Rainey & Co., " has an attachment on us," by which I presume it is meant an attachment on the stock in their hands, is not before the court, nor is he, so far as appears, setting up any claim to the stock, nor does the nature of his claim anywhere appear. Under these circumstances I do not see how the claim of such creditor can be considered at all in this suit. His rights will not be affected by it. The question, then, is whether the assignment and delivery by Spencer to Rainey & Co., on the 25th of November, 1870, of the certificate of stock, coupled with the notice of the 4th of April, 1872, gave Rainey & Co. any, and what, priority of right over Gennett & Co., under their attachment of the 9th of May, 1872.

By the Code, § 1487, the stock in all private corporations is made personal property, and subject to levy and sale as such. In the absence of statute, the weight of authority is that such stock is, although personal property, in the nature of a chose in action, and not subject to the levy of an execution or attachment. Com. Dig., Execution, C. 4 ; *Denton* v. *Livingston*, 9 Johns. 96 ; *Slaymaker* v. *Gettysburg Bank,*

10 Barr, 373; *Nashville Bank* v. *Ragsdale*, Peck. 296; *Union Bank* v. *The State*, 9 Yerg. 490; *Nashville* v. *Thomas*, 5 Coldw. 606; *McLaughlin* v. *Chadwell*, 7 Heisk. 405; *Brightwell* v. *Mallory*, 10 Yerg. 198.

As personal property, stock may be sold and transferred by verbal contract. *Duncuft* v. *Albrecht*, 12 Sim. 189. An actual assignment in writing would be good between the parties to pass the title, whether the stock be a personal chattel or a chose in action. *Palmer* v. *Merrill*, 6 Cush. 282; *Sargent* v. *Franklin Ins. Co.*, 8 Pick. 90; *Johns* v. *Johns*, 1 Ohio, 350; *Brightwell* v. *Mallory*, 10 Yerg. 196; *United States* v. *Cutts*, 1 Sumn. 133.

In the absence of any positive provision of the general law, or of the charter of the corporation, a simple assignment, intimated to the proper officer of the corporation, although not entered on the company's books, would be sufficient to transfer the legal right to the stock, whether a chattel or chose in action; and a *bona fide* assignee would hold the same against a subsequent assignee or attaching creditor. *Stebbins* v. *Phenix Fire Ins. Co.*, 3 Paige, 361; *United States* v. *Vaughn*, 3 Bin. 394; *Clodfelter* v. *Cox*, 1 Sneed, 330.

Nor would it make any difference in such case if there were a valid by-law of the corporation providing that the stock should be " transferable only on the books of the company, at their office, on. surrender of the certificate." For this provision of a by-law could only be for the security of the corporation itself, and would not be binding on third persons, nor affect the rights of the vendee as between him and the vendor. *Broadway Bank* v. *McElrath*, 2 Beas. Ch. 24; *Sargent* v. *Essex Mar. R. Corp.*, 9 Pick. 201. And, even where the provision is embodied in the charter, it would only affect the legal title, and would not prevent the assignee from acquiring, under a valid assignment and notice to the company, if notice be necessary, an equity superior to the equity of a subsequent assignee with notice, or a subsequent attaching creditor with or without notice,

who can only acquire such interest as his debtor had at the date of the assignment. *Stebbins* v. *Phenix Fire Ins. Co.*, 3 Paige, 361 ; *Black* v. *Zacharie*, 3 How. 483 ; *Farmers' Bank* v. *Iglehart*, 6 Gill, 50 ; *N. Y. & N. H. R. Co.* v. *Schuyler*, 38 Barb. 534 ; *Mount Holly Co.* v. *Ferree*, 1 C. E. Green Ch. 117 ; *Hunterdon County Bank* v. *Nassau Bank*, 2 C. E. Green Ch. 496 ; *Duke* v. *Cahawba Nav. Co.*, 10 Ala. 82 ; *St. Louis Perpetual Insurance Co.* v. *Goodfellow*, 9 Mo. 149.

There are decisions to the contrary, where the charter expressly provides that the stock shall be transferable only on the books of the company, or in some other mode specially designated as the only mode. *Fisher* v. *Essex Bank*, 5 Gray, 373 ; *Marlborough Man. Co.* v. *Smith*, 2 Conn. 579 ; *Oxford T. Co.* v. *Bunnel*, 6 Conn. 552. Or where the restriction is by general law. *Skowhegan Bank* v. *Cutler*, 49 Me. 315 ; *Naglee* v. *Pacific Wharf Co.*, 20 Cal. 527.

It is unnecessary to discuss these conflicting decisions, with a view either to see how far they can be reconciled, or to ascertain which is the better sustained by reason and principle, for the charter of the State Insurance Company contains no such express provision as those upon which the decisions are based. See the Act of June 5, 1865, ch. 13 of Private Acts.

The act contains no restrictions upon the *mode* in which the stock may be transferred, and merely provides that no transfer of stock shall be deemed valid and complete until the indebtedness of the stockholders to the company is secured. It contains no direct authority to make any by-law touching the transfer of stock. It simply authorizes the company "to ordain, establish, and put into execution such by-laws, ordinances, and regulations as shall be deemed necessary and convenient for the government of said corporation, not contrary to the laws of this state." This power it would have had without any such provision, since it is inherent in a corporation to make by-laws for its government, to carry into execution its granted powers. *Case of Sutton's Hospital*, 10 Co. 23, 31. But a by-law restricting

a stockholder's right to dispose of his stock in the mode recognized by the law touching such property would be "contrary to the laws of the state," and, therefore, void. *Sargent* v. *Franklin Ins. Co.*, 8 Pick. 90; *Norris* v. *Staps*, Hob. 210, *b*; *Taylor* v. *Griswold*, 2 Green, 222. The only effect which can be allowed to the by-law embodied in the certificate of stock is to reserve the legal title for the protection of the company itself. *Black* v. *Zacharie*, 3 How. 483.

The result is that Spencer had the right, by assignment and delivery of his certificate of stock, to vest the assignee with a title to the stock, which, by notice to the company of the assignment, would be superior to that of a subsequent attaching creditor of the assignor.

But such an assignment, where it is based upon a consideration, would only be good to the extent of the right actually conveyed for the consideration. If the sale were absolute, of course the purchaser would take the absolute right. If it were only in mortgage, trust, or pledge, to secure the consideration advanced, the right would only pass as security for the consideration due at any one time. The answer of Rainey & Co., with their letters, shows that the original assignment to them was in consideration of the specific sum of $513 advanced. The letter of Rainey & Co., of the 4th of April, 1872, expressly concedes that Spencer has an interest in the stock to be then protected. The letter of the 2d of May, 1872, implies the same. Both letters fairly admit that the interest of Spencer is such as may be reached by attachment, for they refer to an attachment taken out in New York by a creditor of Spencer, which necessitates a public sale by the sheriff.

Under these circumstances I am of opinion that, as between Rainey & Co. and Gennett & Co., the former are entitled to a lien upon the stock in controversy, to secure them for so much of the original consideration advanced as remained due and unpaid on the 9th of May, 1872, when Gennett & Co. sued out their attachment, and that Gennett

& Co. are entitled to the residue of the stock, if any. It will be referred to the master to ascertain and report the amount then due to the said Rainey & Co., and the stock will be sold to pay that amount, any surplus to go to Gennett & Co. The costs will be paid out of the fund.