## APAHU *vs.* SOPHIA FEARY.

### IN EQUITY. BEFORE JUDD, C.J.

### JULY, 1884.

A deed set aside, it appearing that the grantor, an aged Hawaiian woman, was of feeble mind, and that the grantee unduly influenced her.

### DECISION OF JUDD, C.J.

This is a bill in equity by one Kapenapuka, as the next friend and guardian *ad litem* of an aged Hawaiian lady, Apahu by name, to declare null and void a certain deed of conveyance to the defendant, of a parcel of land situated at Kapalama, Honolulu, Oahu, dated March 7th, 1884. The bill sets forth that Kapenapuka is the son of Apahu; that she is between seventy and eighty years old; that she has been partially paralyzed for the past three years, and has been of feeble mind and incapable of transacting or understanding business; that she has been cared for and supported by her said son during this period; that on the 7th March last the defendant fraudulently induced the said Apahu to execute a deed of the said premises; that Apahu was induced to sign said deed only after repeated attempts to persuade her to do so, and she finally yielded to the undue influence of the defendant, not under-

standing the nature of the instrument. That said deed is expressed to be in consideration of one dollar, of love and affection on account of past services, and of an agreement for future services; and the petitioner alleges that said consideration is neither good nor valuable, and is insufficient to support the deed; that defendant has not in the past rendered any valuable service to Apahu, and has not bound herself to do so in the future.

It is submitted by the plaintiff's counsel, F. M. Hatch, that no valuable consideration is shown, and affection will not support the deed because the grantor is not related in any way to the grantee. That the conveyance must, therefore, be considered a settlement for the use of the grantor during her life, remainder to defendant.

I think the plaintiff's counsel is right in this contention. No adequate consideration is shown. The past services and support claimed to have been rendered are fully explained by the fact that defendant's adopted mother lived with Apahu, and defendant's acts were but the natural kindness of a neighbor towards an aged friend of her adopted mother. These are not sufficient to support a deed of bargain and sale under the circumstances. The grantor is a Hawaiian lady of over seventy years, suffering from a paralysis of her limbs of some years' standing; her bodily condition is one of great feebleness, and many witnesses say that they have observed times of incoherency of speech indicating a disordered intellect. The deed is a voluntary conveyance without power of revocation. The statements contained in the deed expressing the consideration are "the sum of $1, the grantor's affection for the grantee on account of her having cared for the grantor during times past, and her agreeing to support her (the grantor) during the remainder of her life, and bury her, and other considerations." There is no relation of blood between grantor and grantee alleged or proved.

The grantor has a son living (Kapenapuka) who has adduced considerable testimony as to the care and support rendered by

him to his mother. The premises are worth from $1,000 to $1,500.

Reliable witnesses, Mr. Dowsett and Mr. Rosa, testify that the deed was read and explained to Apahu, and that the matter of procuring the deed occupied a good part of a week.

The attesting witnesses testify that they believe that she fully understood the transaction.

In Court Apahu said she never intended to dispose of the land in this way.

I note also that this old lady was then at defendant's house, cared for by her, and her son was absent and did not learn of the transaction until after it was completed.

Mr. Dowsett says he reminded her of her son, and she said: "Never mind that, I wish the land to go to defendant, as she will care for me."

It seems to me that this is a voluntary conveyance to the use of the grantor, remainder to defendant. For the consideration of future support by grantee, she not having bound herself by covenant, could not be enforced except from the land, and I think that it must mean that her support was chargeable to the land.

Let us see if, in the light of the authorities, such a conveyance can stand. I have no doubt that the highest Court of Great Britain would set this conveyance aside. See *Couts vs. Ackworth,* L. R. 8 Eq., 558; *Everett vs. Everett,* L. R. 10 Eq., 405; *Hanley vs. Pearson,* L. R. 13 Eq., 545; *Hall vs. Hall,* L. R. 14 Eq., 365; *Thompson vs. Dutton,* 23 Ch. Div., 281.

But the Courts of this country have not been so liberal in setting aside voluntary conveyances. In *Afong vs. Afong,* 5 Hawn., 191, I adopted the law of *Viney vs. Roberts,* 109 Mass., 300, where it is laid down that " a voluntary settlement completely executed, without any circumstances tending to show mental incapacity, mistake, fraud or undue influence, is binding, and will be enforced against the settler and his representatives, and cannot be revoked, except so far as a power of revocation has been reserved in the deed of settlement."

In the case before me I find old age, bodily weakness, mental weakness amounting to incapacity at times, and in addition an improvident conveyance by which the grantor is immediately deprived of her title to all her estate for an inadequate consideration and undertaking for future support, insufficiently executed.

In Perry on Trusts, Section 190, the author says: "It is quite immaterial from whence the mental weakness arises. It may arise from a natural and permanent imbecility of mind, or it may arise from some temporary illness or debility, or from the weakness and infirmity of extreme old age. Each case must depend upon its own circumstances. Questions generally arise when there is not an entire want of capacity, where no general rule can be laid down, but the Court is left to judge of the capacity of the contracting party, of the circumstances under which the contract was made, and whether from all the facts in the case the contract ought in equity and good conscience to be sustained."

In *Moore vs. Moore,* 56 Cal., 89, the Court held (in 1880) "that whenever there is great weakness of mind in a person executing a conveyance of land, arising from age, sickness or any other cause, though not amounting to absolute disqualification, and the consideration given for it is grossly inadequate, imposition or undue influence will be inferred, and a Court of equity will, upon proper and reasonable application of the injured party, interfere and set the conveyance aside."

Says Judge Field, in *Allore vs. Jewell,* 44 U. S., 511, "It is not necessary, in order to secure the aid of equity, to prove that the deceased was at the time insane, or in such a state of mental imbecility as to render her entirely incapable of executing a valid deed. It is sufficient to show that from her sickness and infirmities she was at the time in a condition of great mental weakness, and that there was gross inadequacy of consideration for the conveyance. From these circumstances, imposition or undue influence will be inferred."

Having found circumstances from which undue influence can

be inferred, I am of the opinion that the deed ought to be cancelled: Decree accordingly.

*F. M. Hatch,* for plaintiff.

*E. Preston,* for defendant.

Honolulu, July 3, 1884.