### SKINNER v. FT. WAYNE, T. H. & S. W. R. CO.

(Circuit Court, D. Indiana. October 12, 1893.)

No. 8,766.

1. CORPORATIONS—STOCK—TRANSFER—IRREVOCABLE POWER OF ATTORNEY.
    A financially embarrassed railroad contractor entered into a written agreement with a creditor, assigned to him a railroad construction contract and certificates of its stock issued in part payment for construction, and executed a power of attorney to transfer the stock; and the several instruments, when construed together, showed that the contractor intended, not only to pledge the stock as collateral security, but to invest the creditor with the legal title and with unlimited power of disposition. *Held,* that the power of attorney to the creditor was irrevocable, as it was a power coupled with an interest, and that the railroad company could not refuse to transfer the stock on its books, as directed by the creditor, on the ground that the contractor requested that such a transfer should not be permitted.

2. SAME—BILL TO COMPEL TRANSFER OF STOCK—PARTIES.
    The bill by the creditor to compel the corporation to transfer the stock on its books was not defective in that the contractor was not joined as a party defendant.

In Equity. Bill by Porter Skinner against the Fort Wayne, Terre Haute & Southwestern Railroad Company to compel a transfer of corporate stock. Decree for complainant.

Osborn & Lynde, for complainant.
J. M. Dawson, for defendant.

BAKER, District Judge. The exceptions of the defendant raise the single question whether the plaintiff is entitled to a decree, as recommended in the master's report, requiring the defendant and its officers to make or permit the transfer to the plaintiff of the stock mentioned in the bill of complaint on the proper registry or stock books of the corporation. This question must be determined by a consideration of the true construction and effect of

the several written instruments entered into between the plaintiff and E. P. Reynolds & Co. A large amount of testimony was taken and reported by the master minutely detailing the oral negotiations between the parties, and explaining what is claimed to be their true intent and meaning, from which the master has found that it was the intention of the parties by their written agreement to clothe the plaintiff with the absolute power to control the stock, and to deal with the same as he saw fit.

In the absence of fraud, accident, or mistake, properly averred and satisfactorily proved, all antecedent oral negotiations between the parties are merged in the written agreement, which becomes the sole medium of proof and the sole measure of the contractual rights and obligations of the parties. Oral testimony is competent to explain the situation of the parties to the subject-matter to enable the court, as nearly as it can, to read and construe the written agreement in view of all the attendant facts and circumstances under which it was entered into. Still, it is the written agreement, fairly interpreted to effectuate their intent, which admeasures the rights and liabilities of the parties to it.

In ruling upon the exceptions, the court will therefore exclude from its consideration all the testimony relating to the antecedent oral negotiations of the parties, and all which is explanatory of their intent and meaning; and, keeping in view the facts and circumstances leading up to the written instruments, it will endeavor to ascertain from them the rights and obligations of the parties. The facts, dehors the written instruments, material to the present inquiry, may be briefly stated. Reynolds & Co. were railroad contractors and builders, who had a contract with the defendant for the construction of about 30 miles of railroad extending from Bainbridge to Carbon, in this state. When a little more than 10 miles of the railroad had been substantially completed, the contractors became financially embarrassed, and were unable to proceed with the further performance of the contract. The plaintiff, either by loans of his own money to Reynolds & Co. or by assisting them as guarantor or surety to raise money, had advanced to and become liable for them to the amount of $190,000. Reynolds & Co. were unable to repay to the plaintiff the money borrowed from him, or to assist him in paying the note on which he had become liable for them as guarantor or surety. They manifested a willingness to save the plaintiff from ultimate loss so far as they could. They had the contract for building the 30 miles of railroad, and had received on account of its part performance from the defendant certificates entitling them to $245,000 of its first mortgage bonds, and $207,900 of its paid-up capital stock, consisting of 2,079 shares, of the par value of $100 each, and a small amount of railroad material.

The several writings consist of the written agreement in part copied into the master's report, the assignment indorsed on the contract for building the 30 miles of railroad, the assignments indorsed on the two certificates of stock, one being for 486 shares,

and the other for 1,513 shares, and the power of attorney executed by Reynolds & Co. to the plaintiff. These several instruments relating to the same settlement, and executed at substantially the same time must be construed together. The purpose to be subserved by the execution of these various writings, and by the delivery to the plaintiff of the contract, and of the certificates entitling the holder to first-mortgage bonds, and of the two certificates for 1,999 shares of stock, was to secure the plaintiff for the amount due to him from Reynolds & Co., and to invest him with the legal title to the same, with absolute power of disposition. The only right retained by Reynolds & Co. was by paying to the plaintiff the entire amount for which they were liable to him before the plaintiff had sold these securities, to require their reassignment to them, with the further right after their sale to participate in any surplus remaining after full payment of the indebtedness due plaintiff, with interest and costs. Construing these instruments together, it is apparent that Reynolds & Co. intended, not only to pledge the stock as collateral security, but also to invest the plaintiff with the legal title to the stock, with unlimited power of disposition, to more certainly effectuate the purpose of the pledge. The assignment indorsed on each certificate of stock was in these words: "For value received, we hereby sell, assign, and transfer to Porter Skinner the shares of stock within mentioned, and hereby authorize him to make the necessary transfer on the books of the corporation." The power of attorney authorizes the plaintiff to make all sales and transfers of the stock as fully and completely as Reynolds & Co. could make them if personally present and making the same. This power was coupled with an interest, and was irrevocable.

Counsel for defendant insist that the plaintiff, holding the stock as security for a debt, is not entitled to vote upon it. It is not now necessary to decide that question. Whether he is entitled to vote upon the stock at corporate elections or not, it is clear that he is entitled to be invested with the legal title to the stock, with the absolute power of disposition. As between the parties to the assignment, it is enough that the certificates of stock were delivered with authority to the assignee, or any one he might name, to transfer them on the books of the corporation. If a subsequent transfer of the certificate were refused by the corporation, it can be compelled at the instance of either of the parties to the assignment. Johnston v. Laflin, 103 U. S. 800; National Bank v. Watsontown Bank, 105 U. S. 217. There is nothing in the statutes of this state forbidding the transfer of stock on the books of the corporation to a pledgee.

The defendant excuses its refusal to make or permit the proper transfer on the ground that it has been requested by Reynolds & Co. not to permit such transfer. The master finds, and the testimony clearly shows, the execution by Reynolds & Co. of the assignment and power of attorney, and that the president and the secretary and treasurer of the defendant were personally cognizant of their due execution. Reynolds & Co. have never drawn

the validity of the assignment and power of attorney in question. So long as the validity of these instruments remains unchallenged, the defendant has no discretion in respect to the transfer of the stock, and has no concern with the equities, if any, existing between the plaintiff and Reynolds & Co. The rule is that where there are opposing claimants to the stock, each claiming to be the owner, and to have the right to registry, the corporation may, by filing a proper bill, compel the claimants to interplead, and have their respective rights determined; but, to warrant the refusal of a registry, there must be a clear doubt as to the proper claimant. No such doubt is shown in this case.

The bill is not defective because brought against the defendant alone. The wrong complained of is that of the defendant. It has no rightful power to refuse to make or permit the required transfer, nor has it control over such transfer. Bank v. Lanier, 11 Wall. 369; Webster v. Upton, 91 U. S. 65; Black v. Zacharie, 3 How. 483.

The exceptions ought to be overruled, and it is so ordered. Let a decree be entered conformably to the recommendation of the master.