### DIRECTION DER DISCONTO-GESELLSCHAFT v. UNITED STATES STEEL CORPORATION et al.

### BANK FÜR HANDEL UND INDUSTRIE v. SAME.

(District Court, S. D. New York. June 5, 1924.)

1. **United States ⪦135—United States held proper, but not necessary, party to suit to determine title to stock in New Jersey corporation seized by British public trustee.**

   The United States, as transferee of owner's rights under the Treaty of Berlin (42 Stat. 1939), would be proper, but not necessary, party to suit by German corporation to establish title to shares of stock in New Jersey corporation seized by British public trustee from persons domiciled in England.

2. **Courts ⪦512—Impute to suitors rights and duties similar to those which arise in place where transactions occurred.**

   No court enforces foreign law, but in adjusting rights of suitors courts will impute to them rights and duties similar to those which arise in place where transactions occurred.

3. **Corporations ⪦640—State imposes duties on foreign corporation of kind imposed by law of its domicile.**

   Though federal District Court sitting in New York must look to New York law to determine duties of New Jersey corporation respecting transfer of shares of stock, New York will impose duties similar to those of corporation's domicile.

4. **Corporations ⪦126—Indorsement in blank and delivery of certificates of stock transfers title.**

   Where certificates of stock in New Jersey corporation were issued before enactment of Uniform Stock Transfer Act, who should be recognized

---

⪦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

as stockholder must be determined by common law of New Jersey, under which indorsement in blank and delivery of certificate transfers title of stock.

5. War 12—Surrender of stock certificate on demand of British public trustee held good delivery, but if forcibly seized there was no delivery.

If registered holder of certificate of stock in New Jersey corporation, domiciled in England as agent of German corporation, surrendered certificate on demand of British public trustee, there was delivery within New Jersey common law, though delivery was compelled by sanctions of English statute; but if certificate was forcibly seized there was no valid delivery.

6. War 12—Title of British public trustee to certificate of stock in New Jersey corporation, indorsed in blank, held good as against enemy owners.

Where registered owners of certificates of stock in New Jersey corporation were British subjects, and certificates were indorsed in blank, title of British public trustee, who had reduced them to possession by capture, was good as against enemy owners.

7. International law 10—Doctrine of reciprocity confined to foreign judgments.

Doctrine of reciprocity is confined to foreign judgments alone, for protection of nationals of forum, and does not prevent recognition of seizure by British public trustee of certificates of stock in New Jersey corporation owned by German corporation, without showing that captures made here would be recognized in Great Britain.

In Equity. Separate suits by the Direction der Disconto-Gesellschaft and by the Bank für Handel und Industrie against the United States Steel Corporation, Public Trustee, and another. Decree for defendant Steel Corporation.

Final hearing in two suits in equity upon an agreed statement. Each bill was filed to establish the plaintiffs' title to 100 shares of the stock of the United States Steel Corporation, which that company had refused to recognize because of the claims of the other defendant, the public trustee of England and Wales. Certain other parties were joined merely to foreclose any possible rights. They appeared and expressly disclaimed any present interest.

The cases are thus: The plaintiffs, being two German corporations, one maintaining a regular branch in the city of London, at the outbreak of the Great War each owned certificates for 100 shares in the United States Steel Corporation, a New Jersey corporation. In all cases the registered owners of the shares, as they appeared on the books of the Steel Corporation and in the certificates issued, were domiciled and residents in England and British subjects, being brokers or the like, in whose name it is the practice there, as in the United States, to register shares which are to pass from hand to hand by delivery. Each certificate was indorsed in blank; that is to say, the power of attorney to transfer the shares on the back of the certificate was signed by the registered holder, no name being inserted as attorney in the blank space left for that purpose. The plaintiffs had purchased the certificate outright, and the plaintiff the Disconto-Gesellschaft still held them in its London branch. The plaintiff the Bank für Handel had pledged those which it owned with an English banking house on a running account.

Shortly after the beginning of the war Parliament passed a statute, called the Trading with the Enemy Act, which among other matters enacted that an existing public corporation, known as the public trustee, the defendant herein, should be empowered to seize and acquire title to the property of all enemy aliens within the realm. The provisions of this statute and its amendments need not be detailed, nor the action of the public trustee under it, except to say that in pursuance of the powers so vested in him, and of certain orders of the Board of Trade, he took the certificates into his possession, complying with whatever formalities were necessary to perfect his title in accordance with the laws of England. It is his title, so established, which he now as-

For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

serts, and which is the reason for the refusal of the United States Steel Corporation to register the shares in the plaintiffs' names. The question, therefore, is whether the title of the public trustee by capture is good against enemy owners when the property consists of shares in a New Jersey corporation, when the registered shareholders were subjects of Britain, and had indorsed the certificates in blank, and when the certificates had been physically reduced to possession in the United Kingdom by the public trustee.

Alfred K. Nippert and John Wilson Brown, III, both of Washington, D. C., for plaintiffs.

Frederic R. Coudert, Howard Thayer Kingsbury, and Mahlon B. Doing, all of New York City, for public trustee.

William Averell Brown, of New York City, for United States Steel Corporation.

LEARNED HAND, District Judge (after stating the facts as above). I must be careful to observe what is not involved in the suits. I have nothing to decide as to the validity of the seizure of an unindorsed certificate in the name of a registered shareholder, who was not only a subject of Germany, but a resident of that empire, over whom, therefore, the king of Great Britain had no personal jurisdiction, and who owed him no allegiance. Again I have nothing to do with the power of the United States to capture these shares, notwithstanding a prior capture in England; that is, I need not say whether, if the local sovereign lays his hand upon the corporation, he should prevail over similar action taken elsewhere against the shareholder. Miller v. Kaliwerke, etc. (C. C. A. 2) 283 Fed. 746. Perhaps that would always be a diplomatic question; in any event, it is not up in these suits. Any rights of the United States as captor depended upon a state of war and ceased after July 2, 1921, no capture having been attempted up to that time.

[1] It may be as well here to take up the point raised by the United States Steel Corporation that the United States, not as putative captor, but as transferee under the Treaty of Berlin (42 Stat. 1939) might demand the same shares after the termination of these suits, since no decree in this suit can foreclose it. While it is therefore quite true that the United States Steel Corporation is not protected against such a demand, I think that the risk to the company is not serious enough to justify a refusal to adjust the differences actually presented. The United States by hypothesis must claim under the treaty and its rights would be in devolution from those of the plaintiffs. If, as I believe, those rights had already ended before the treaty was made, it is difficult to see how the United States, which may not claim as captor, could succeed as grantee. Furthermore, though it is reasonably apparent that Congress does not mean to act in the matter, yet, since no lapse of time would affect its rights, the controversy could in all probability never be adjusted, if the United States is a necessary party. It must be forever hung up without decision against the possible assertion by the United States, good till the end of time, of a claim, derivative merely from the rights of the plaintiffs, which it apparently never means to make. Faced with this very practical dilemma, it appears to me that I may properly say that, while the United States would be

a proper party, it is not a necessary one, and that the case may proceed. Nor does the company's risk seem to me substantial enough to require the new certificates to carry a notice which might very seriously affect their negotiability, as suggested.

[2] Coming, then, to the actual issues, I have to decide what person the company must recognize as shareholder. In deciding that question I can only follow the law of the place where I sit. It is indeed commonly said that, when a court must consider the legal effect of events happening elsewhere, it enforces foreign law. That I conceive is a compressed statement, which it is at times useful to expand. Of necessity no court can enforce the law of another place. It is, however, the general law of all civilized peoples that, in adjusting the rights of suitors, courts will impute to them rights and duties similar to those which arose in the place where the relevant transactions occurred. Hilton v. Guyot, 159 U. S. 163, 16 Sup. Ct. 139, 40 L. Ed. 95; Guinness v. Miller (D. C.) 291 Fed. 769.

[3, 4] While I must therefore first look to the law of the state of New York to ascertain the duties of the United States Steel Corporation, that state will impose duties similar to those of the domicile of the corporation, New Jersey. At the time when these certificates were issued in January, 1913, and February, 1916, the Uniform Stock Transfer Act (P. L. 1916, p. 404) had not been enacted in New Jersey (it was passed in March, 1916), and by section 23 of that act it does not apply to certificates issued before its passage. Hence the question as to who must be recognized as the shareholder is to be determined by the common law of New Jersey. There is no difference, however, between the common law (Johnston v. Laflin, 103 U. S. 800, 26 L. Ed. 532) and the law of that state (Broadway Bank v. McElrath, 13 N. J. Eq. 24); that is to say, the indorsement in blank and delivery of the certificate transfers the title to the shares. No controversy can arise as to the first of these conditions, because under the law of New Jersey, as well as under the law of England, the signature of the power of attorney by the registered holder, without filling in any name, was an indorsement in blank. Controversy can and does arise over the question of delivery, and the agreed statement of facts merely says that the public trustee "physically seized, took possession of and retained" the certificates. The "vesting orders" provide that the securities shall "vest" in him, together with the right to take possession of the documents.

[5] It is, of course, possible that in the case of the Disconto-Gesellschaft the local agent of the plaintiff surrendered the certificates on demand, and in the case of the Bank für Handel that the pledgee did the same. Were those facts admitted, the case would at once be clear, because such a surrender would be a delivery within the common law of New Jersey. The fact that the delivery was compelled by the sanctions of the English statute would be irrelevant. Any deliberate action of the sovereign within its own territory is necessarily lawful. American Banana Co. v. United Fruit Co., 213 U. S. 347, 356, 29 Sup. Ct. 511, 53 L. Ed. 826, 16 Ann. Cas. 1047. No foreign court would treat it otherwise, unless it violates the ethos of its own people, a position scarcely tenable in a country which under similar, though less pressing, provocation did exactly the same thing.

However, the agreed facts do not allow this easy disposition of the suits, because it is consistent with them that the public trustee may have forcibly seized the certificate, and such a change of possession would not fall within any latitude of definition of the word "delivery," as the plaintiffs properly maintain. Therefore, as the English statute was not part of the law of New Jersey, it becomes necessary to determine whether the transfer of title to the shares is governed by the law of New Jersey or the law of England. It is, indeed, sometimes said that the transfer of shares must be governed by the law of the corporate domicile; but the cases do not, I think, go so far. In Hammond v. Hastings, 134 U. S. 401, 10 Sup. Ct. 727, 33 L. Ed. 960, the question was only whether the transferee took subject to the corporation's lien; in Shaw v. Goebel Brewing Co. (C. C. A. 6), 202 Fed. 408, 120 C. C. A. 470, 45 L. R. A. (N. S.) 1090, whether the conditions annexed to the shares were valid against the assignee. Black v. Zacharie, 3 How. 483, 11 L. Ed. 690, indeed, recognizes that the transfer of "equitable title" is governed by the lex loci, and within "equitable title" Justice Story certainly included all that we are discussing here. Under the law of England the transfer of title is determined by the lex loci. Williams v. Colonial Bank, L. R. 38 Ch. Div. 388 (C. A.). This must be true, whether the shares be identified with the certificates qua documents, or whether the rights of the transferee be worked out as attorney for the registered holder.

It is scarcely necessary to say that, if the shares are identified with the certificates, they pass as chattels, and the law of the place of transfer controls, certainly when there is a local statute which is relevant. Green v. Van Buskirk, 5 Wall. 307, 18 L. Ed. 599. There are many cases which do so identify them, and perhaps these should serve, without more. Yazoo, etc., Co. v. Clarksdale, 257 U. S. 10, 42 Sup. Ct. 27, 66 L. Ed. 104; Simpson v. Jersey City Cont. Co., 165 N. Y. 193, 58 N. E. 896, 55 L. R. A. 796; Beal v. Carpenter (C. C. A. 8) 235 Fed. 273, 148 C. C. A. 633; Merritt v. Amer. Steel Barge Co. (C. C. A. 6) 79 Fed. 228, 24 C. C. A. 530.

[6] Yet the same result follows by an analysis which I must own seems to me more accurate. When the registered holder executed the powers of attorney upon the back of the certificates, he made grants in England which should be interpreted by English law. Williams v. Colonial Bank, L. R. 38 Ch. Div. 388 (C. A.). That is to say, the grantees of the powers must be ascertained by a resort to English decisions. Under that law he gave power to any holder of the certificate to insert his name and become the grantee. Colonial Bank v. Hepwroth, L. R. 36 Ch. Div. 36, 53, 54. Within the term "holder" might conceivably be included (1) any one in actual possession; (2) any one in rightful possession; or (3) any one who had title. Section 5 of the Uniform Stock Transfer Law includes the first, but I need not go so far as that. I need only say that the holder of the title is included.

I understand that this the plaintiffs deny, asserting, on the contrary, that the grant of the power is intended to include only such holders as took title to the certificates by voluntary transfer. Obviously this cannot be so, else no sale of such certificates under attachment or execution would pass more than the naked documents, which is quite con-

trary to the cases I have cited a moment since. Nor is the position any more tenable in principle. The indorsement· is precisely to give currency to the document, to make it more than an idle bit of evidence of a right which remains in the hands of the assignor. To suppose that his purpose includes the possibility that the grantee of the power shall be separated from the owner of the certificate is to suppose that he contemplates that very event which his indorsement was meant to obviate. The certificate becomes in effect payable to bearer, and the power must run with property in the document which is in substance only ancillary to it. Hence under this view I have only to find, just as before, whether the title to the certificates passed to the public trustee. That question I have answered, and for the reasons already given.

The plaintiffs' cases do not look to another conclusion. The case of Jellenik v. Huron Copper Co., 177 U. S. 1, 20 Sup. Ct. 559, 44 L. Ed. 647 is often cited to show that corporate shares can have no situs, except at the domicile of the corporation. It holds nothing of the sort; only that they do have a situs there, which is a very different matter. In truth, corporate shares have a situs in both places, so long as we insist upon applying to them a word drawn from the law of land and chattels, which must be in a single place at a time. Because a share, if we do not wish to call it a chose in action, is at least a legal relation, and can have no spatial character except by virtue of the parties to the relation. Wherever either party is, there is the property as respects such parts of the relation as touch that party. Where the corporation is, there dividends must be paid and all other duties performed to which the shareholder is entitled. There also may the sovereign declare who shall be the shareholder. Acts required of the corporation as performance of those duties will be normally treated as performance elsewhere. Similarly, where the shareholder is, there the share may be transferred by compulsion, and perhaps, since he is subject to compulsion, by decree in rem, even when he does not obey. There is no inconsistency in all this until one presupposes that, because the share is in one place, it cannot be in any other. Jellenik v. Huron Copper Co., supra, does not intimate anything of the sort.

Again, Miller v. Kaliwerke, etc., supra (C. C. A. 2) 283 Fed. 746, has equally nothing to do with the facts at bar. It arose on a petition under our own Trading with the Enemy Act (Comp. St.˙ 1918, Comp. St. Ann. Supp. 1919, § 3115½a et seq.) ancillary to the Custodian's statutory powers to reduce property to his possession. No claim of right was good against it; all such must be made under section 9 of that act after the Custodian gets possession of the res. For that reason the court expressly reserved all questions of right, and the case decides no more than that, where the corporation is, there also are the shares, which indeed adds nothing to Jellenik v. Huron Copper Co., supra. Moreover, even if the court had assumed to decide the relative rights of the United States as captor at the domicile, and the United Kingdom as captor of the certificate indorsed in blank, it would not be relevant. That issue would depend upon whether the public trustee, as successor of the German shareholder, should succeed against the United States, which had jurisdiction of the corporation itself. Without suggesting

any answer to that question, it is quite enough to say that it has nothing to do with a situation where the public trustee comes into conflict only with the German shareholder.

The same may in substance be said of Randfontein, etc., Ltd., v. Custodian of Enemy Property, in the Appellate Division of the Supreme Court in South Africa. There the question arose of shares in South African companies which the Custodian claimed under the Treaty of Versailles, which transferred to the Union of South Africa all property within that state. The court decided that the shares were within the Union and could be seized. Had the certificates been seized elsewhere, and the captor presented them for registry, the same question would have arisen as would have arisen in Miller v. Kaliwerke, etc., supra, had the public trustee filed a claim under section 9 of our own Trading with the Enemy Act. As it stands, the case has no bearing upon those at bar.

[7] Finally, the plaintiffs argue that we should not recognize captures made in the United Kingdom until it appears that that nation extends a like recognition to captures made here. The point depends upon a misunderstanding of the effect of the case of Hilton v. Guyot, supra, 159 U. S. 113, 16 Sup. Ct. 139, 40 L. Ed. 95. Whatever may be thought of that decision, the court certainly did not mean to hold that an American court was to recognize no obligations or duties arising elsewhere until it appeared that the sovereign of the locus reciprocally recognized similar obligations existing here. That doctrine I am happy to say is not a part of American jurisprudence. It is true that a judgment creates a debt, and is indeed an instance of the general principle. But it is a most especial instance, and no generalizations may properly be drawn from it. A judgment involves the direct action of a court against individuals, and offers more excuse for national jealousy than when the obligation arises from laws of general application. So far as I know, the doctrine of reciprocity has been confined to foreign judgments alone, and has no application to situations of this sort. Moreover, it is a doctrine in supposed protection of the nationals of the forum. On what theory citizens of a foreign state may invoke it I cannot understand. These plaintiffs are German citizens, and it would scarcely lie in their mouth to complain, even had it affirmatively appeared that the courts of England would not recognize similar captures made of shares under our own statutes. Much less must it be shown that they would so recognize them.

The public trustee may take a decree declaring that the plaintiffs are not entitled to the shares at issue or to be registered as shareholders, and directing the United States Steel Corporation, upon surrender of the proper certificates, to register him as shareholder and to issue appropriate certificates to him in evidence thereof.

Costs against the plaintiffs.