## EASTON *v.* GERMAN–AMERICAN BANK.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 291.   Argued May 4, 1888. — Decided May 14, 1888.

A creditor whose debt is secured by a deed of trust of real estate to a third party as trustee, may purchase the property at a sale by the trustee under the terms of the trust; and if he credits the debtor on the mortgage debt with the amount of the purchase money, it is in fact and in law a money payment to the use and benefit of the debtor.

The plaintiff in error acquired by the purchase from the assignee in bankruptcy no interest either in the debt of the bankrupt to the defendant in error, or in the real estate conveyed in trust to secure it.

THE court stated the case as follows:

On April 14, 1875, the firm of Bowen Brothers, of Chicago, borrowed of the German-American Bank of New York the sum of $27,500, for which they gave their promissory notes, payable, respectively, in two, three, and four months from date. As collateral security for the payment of the loan they deposited with the bank forty bonds executed by themselves, payable to bearer five years from date, with interest semi-annually, of the denomination of $1000 each, dated April 1, 1873, the payment of which was secured by a deed of trust made by the individual members of the firm to George W. Smith, conveying to him certain real estate therein described, situated in Cook County, Illinois. By the terms of the written agreement, under which the collateral security was deposited, the bank was authorized, on non-payment of the notes at maturity, to sell the bonds either at the board of brokers, at public auction, or at private sale, and without notice, and to apply the proceeds of the sale to the payment thereof. These collateral bonds thus deposited were part of a series of one hundred of like tenor and amount, all secured by the deed of trust to Smith. That deed of trust provided that, in case of default in the payment of the bonds or interest, it should be lawful for the trustee, on the application of the holder of any of the bonds, to sell the real estate or any part thereof, and all the right and equity of redemption of the grantors therein, at public vendue, to the highest bidder, for cash, and, upon making such sale, to execute and deliver a deed of conveyance in fee of the premises sold. In January, 1877, the trustee in the trust deed, upon the application of the State Savings Institution of Chicago, the holder of thirty-two of the bonds upon which there had been a default for non-payment of interest, sold the real estate in strict conformity with the terms of the power in the trust deed, after due notice, at public auction, to Wirt Dexter, for the sum of $50,000, and conveyed the premises to the purchaser in pursuance of the same. Dexter, in making the bid and purchase of the premises at public auction, acted as agent for the holders of all the bonds,

including the German-American Bank, he having been author-ized by them to bid for and purchase the property for them jointly. Thereafter he conveyed an undivided forty one-hun-dredths of the property purchased by him, and in a partition suit that interest in the real estate was set off, to the German-American Bank in severalty. Dexter paid no money in bid-ding in the property except the actual costs of the sale, but the trustee credited upon the bonds held by the German-American Bank forty one-hundredths of the amount of the bid, being $472 upon each bond ; and the whole sum, amount-ing to $18,880, was indorsed as a payment on the three notes. The German-American Bank continued to hold title to the real estate conveyed to it by Dexter until February 8, 1881, when, in consideration of $56,000, the bank conveyed the same in fee to John C. Dore, and thereafter, in February, 1882, also delivered to Dore the forty bonds then in its posses-sion with the credits indorsed thereon. These bonds were delivered to Dore in accordance with an agreement dated February 19, 1881, which recited that Dore " desires to obtain possession and ownership of said forty bonds in connection with the purchase of said property from said bank."

In the meantime, the members of the firm of Bowen Brothers, on November 10, 1877, were adjudged bankrupts on a petition filed on June 2 of that year; and during 1878 they severally received their final discharges in bankruptcy. On April 21, 1880, Robert E. Jenkins, assignee in bankruptcy of the Bowen Brothers, by an order of the court, sold all his right, title, interest, and claim as assignee, and all right, title, interest, and claim of the bankrupts in and to the land de-scribed in the trust deed, to Carl F. Hermann for the sum of $840, and afterwards conveyed the same to him by deed dated and acknowledged May 13, 1880. The assignee also on April 21, 1880, sold to the appellant, Charles L. Easton, for the sum of $5, the claim against the German-American Bank of New York " for interest in all collaterals pledged with said bank by said bankrupts or either of them;" and by a deed dated May 15, 1880, assigned the same by the same descrip-tion to him.

It was not denied that John C. Dore purchased the land from the German-American Bank with knowledge of the previous conveyances by the assignee in bankruptcy, to Hermann and to Charles L. Easton.

On February 24, 1881, James H. Easton, a brother of the appellant, having succeeded to the title of Hermann to the land in question, filed a bill in equity in the Circuit Court of the United States for the Northern District of Illinois, against the German-American Bank, to which, by an amended and supplemental bill, John C. Dore was also made a defendant, in which were set forth substantially the facts stated in the present bill of complaint, and praying for an account against the German-American Bank, and that the complainant might be permitted to redeem the land on payment of what might be found due on the original loan to Bowen Brothers. It is admitted that this suit was brought in the name of James H. Easton, for the benefit of Josiah H. Helmer, the latter having previously acquired the title of Hermann and conveyed it to James H. Easton in order to enable the suit to be brought in the Circuit Court of the United States. Helmer himself had previously brought an action of ejectment to recover possession of the land. The ejectment suit was abandoned when the bill in equity was filed; and pending the bill, in September, 1883, before the commencement of the present suit, a settlement was made between Helmer and Dore, whereby, in consideration of a certain sum paid by Dore, both Helmer and James H. Easton, the latter at Helmer's request, by separate deeds released all their right, title, and interest in and to the lands in question to one Berger for the benefit of Dore.

On January 27, 1884, the present bill in equity was filed, wherein Charles L. Easton, claiming title by virtue of the deed of assignment made to him by Jenkins as assignee in bankruptcy of the Bowen Brothers, seeks to hold the German-American Bank accountable to him for the sum of $56,000, as the proceeds of the collaterals held by it realized from the sale of the real estate conveyed to the bank by Dexter, and a decree for any sum found due to it by reason thereof after payment from the said proceeds of the original indebtedness of Bowen Brothers to the bank.

The case was heard in the Circuit Court upon the pleadings and proofs disclosing the state of facts already recited, when a decree was rendered dismissing the bill for want of equity. From this decree the present appeal has been taken.

*Mr. Charles P. Crosby* and *Mr. Charles L. Easton*, in person, for appellant.

*Mr. Edward Salomon* for appellee.

MR. JUSTICE MATTHEWS, after stating the case as above reported, delivered the opinion of the court.

The right of the complainant to the relief prayed for is based upon the contention that the German-American Bank originally held the bonds secured by the deed of trust as a pledge given by way of security for the repayment of the loz to Bowen Brothers; that it has never sold that pledge, in pursuance of the terms of the agreement between the parties, and as required by law; that the land itself, the title to which was conveyed by Bowen Brothers to Smith in trust, was a mere incident to the pledge and a part of it; that notwithstanding the form of a sale under the trust deed by the trustee to Dexter, there was no sale in fact, and in law the conveyance by Dexter to the bank operated only to convey the title to the bank in the same capacity in which it held the bonds as collateral, that is, as trustee for the debtors; that the subsequent sale by the bank to Dore was the first effective conveyance of an absolute title, but was made by the bank in its capacity as trustee for the Bowens; and that as such the complainant, having succeeded to the Bowens' rights, is entitled to require the bank to account for its proceeds.

Where personal property is pledged, the pledgee acquires the legal title and the possession. In some cases, it is true, it may remain in the apparent possession of the pledgor, but, if so, it can be only where the pledgor holds as agent of the pledgee. By virtue of the pledge, the pledgee has the right by law, on the default of the pledgor, to sell the property pledged in satisfaction of the pledgor's obligation. As in that

transaction the pledgee is the vendor, he cannot also be the vendee.  In reference to the pledge and to the pledgor, he occupies a fiduciary relation, by virtue of which it becomes his duty to exercise his right of sale for the benefit of the pledgor.  He is in the position of a trustee to sell, and is by a familiar maxim of equity forbidden to purchase for his own use at his own sale.

The same principle applies with a like result where real estate is conveyed by a debtor directly to a creditor as security for the payment of an obligation, with a power to sell in case of default.  There the creditor is also a trustee to sell, and cannot purchase the property at his own sale for his own use.

In the present case, the bonds of the Bowen Brothers, secured by the deed of trust, were pledged to the German-American Bank as security for the repayment of the loan made to the Bowen Brothers, but those bonds have not in fact been sold, unless the transfer of them by the bank to Dore be considered a sale.  It was not such, however, in point of fact or of law; nothing was paid for them, and they were delivered to Dore merely as muniments of title in connection with his purchase of the real estate.  At that time they were of no value, for they were merely the personal obligations of the Bowen Brothers, from which they had been released by the discharge in bankruptcy.  No suit could have been maintained upon them as against the only obligors by whose discharge in bankruptcy they had lost their character as well as their value as property.

The equity of the complainant, therefore, if he have any, must be considered as transferred from the bonds themselves, viewed as instruments and obligations, to the money which had been received on account of them by virtue of the sale of the real estate by the bank to Dore.  Whether the complainant can now assert any equitable interest in that money depends in the first place on the nature of the title which the bank acquired by the conveyance to it from Dexter; and whether the principles of a pledge, and of a trust arising thereon, apply to the real estate conveyed by the Bowens to Smith as a trustee to secure the payment of the bonds.

It is very plain, we think, that these principles do not apply. The land in question was conveyed by the debtor, not directly to the creditor, but to a stranger. That stranger, by virtue of the conveyance, held the legal title in trust for the purpose of sale according to the power contained in it. That power he executed in strict accordance with its terms. A default has been made by the debtor, and at the request of a part of the creditors he was required to sell the property at public auction to the highest bidder, without limit or condition, in order that the proceeds of the sale might be applied to the payment of the debt, to secure which the land had been conveyed in trust.. The sale was made under the direction and control of the trustee, but, as the creditors who held the obligations of the debtors were not themselves trustees, there was nothing, either at law or in equity, to prevent their being bidders and becoming buyers at the trustee's sale. In reference to that sale they occupied no position towards the debtor of trust or confidence. They were charged in respect to it with no duty whatever. They had an interest in it that the property should produce enough to satisfy the debts which it had been given to secure. Beyond that they had neither interest nor duty, and in their own interest the creditors had a right to bid so as to prevent the property from being sacrificed at the sale below its value in order that it might be made to produce the largest amount towards payment of the debt.

The relation of a creditor secured by such a deed of trust to a sale made under a power given to a stranger as trustee does not differ from that of a mortgagee of real estate sold under judicial proceedings for foreclosure by a decree of a court of equity. At such a sale nothing is more common than for the mortgagee to become the purchaser; and it is as beneficial to the debtor as to himself that he should be permitted to enhance the competition at such a sale in order to protect his own interests. In that respect, his own interest coincides with that of his debtor, as it is for their mutual benefit that the property should not be sacrificed so as to leave any part of the debt unpaid.

It is argued, however, that in the present instance the sale

to Dexter was a sale only in form, and not in fact, because no money passed. ·This, however, is an error, because the whole amount bid by Dexter at the sale, which was the consideration for the conveyance to him by the trustee, was at once credited by the principal creditors, for whom he was acting as agent, as a credit of cash upon the overdue obligations of the debtor. In fact and in law it was a payment of money to the use and benefit' of the debtors in pursuance of their authority.

In addition to this, there is another ground which equally supports the decree below. As already recited, the assignee in bankruptcy, in pursuance of an order of the court, sold and conveyed to Hermann all the interest which he as assignee and the Bowens as bankrupts had in and to the real estate in question; and by subsequent conveyances whatever title, if any, thereby passed has become vested in Dore for his use. All that was conveyed by the assignee to Charles L. Easton, the complainant in this suit, was the interest of the assignee and of the bankrupts " in all collaterals pledged with said bank by said bankrupts or either of them." If this can be considered as the conveyance of any interest in the real estate, it was ineffectual and void, because that interest had been previously conveyed by the same grantor to Hermann. If it is limited to the bonds of the Bowen Brothers secured by the deed of trust, it is equally ineffective, because there was nothing to convey. These bonds were the mere personal obligations of the bankrupts themselves, in which neither they nor their assignee had any right of property, and which had become extinguished as obligations in the hands of any one by the bankrupts' certificate of discharge.

For these reasons the decree of the Circuit Court is

*Affirmed.*