**In re EASTERN BANCORPORATION,**
**Debtor.**

**Bankruptcy No. 80–02962G.**

United States Bankruptcy Court,
E. D. Pennsylvania.

Oct. 7, 1982.

Paul R. Rosen, Patricia C. Pipitone, Spector, Cohen, Gadon & Rosen, P. C., Philadelphia, Pa., for former officers and directors of Eastern Bancorporation.

William A. Harvey, David E. Powers, Fellheimer, Eichen & Goodman, Philadelphia, Pa., for the debtor, Eastern Bancorporation.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue at bench is whether the debtor's petition for a reorganization under chapter 11 of the Bankruptcy Code ("the Code") was duly authorized under its corporate by-laws and the Pennsylvania Business Corporation Law ("the PBCL"). We conclude that the petition was validly authorized because: (1) the specific default provisions of the pledge agreement involved herein, made between the pledgee and the shareholder-pledgor of the debtor's stock, govern over the general provisions of the PBCL; (2) under those default provisions, the pledgee succeeded to all of the corporate rights of the pledgee; (3) 99.9% of the debtor's shareholders received *actual* notice of the special shareholders meeting at issue; and (4) strict compliance with the debtor's by-laws is unwarranted in light of the debtor's history of disregard for corporate formality.

The facts of the instant case are as follows:[1] Eastern Bancorporation ("the debt-

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

or") is a corporate member of related entities collectively referred to as the Capital First Group.[2] On March 12, 1976, First Pennsylvania Bank N.A. ("First Pennsylvania") entered into two (2) separate, but interrelated loan transactions with Capital First affiliates. First, it loaned State Bancshares, Inc. ("SBI") $900,000.00, which amount was used by SBI to acquire 750,000 shares of the debtor from Capital First. Then, it loaned $650,000.00 to Aircraft Acceptance Corp. ("ACC"), the proceeds of which were used by ACC to pay an obligation to SBI and to effect a release of an earlier pledge of 750,000 shares of the debtor's common stock to SBI. By September, 1976, ACC had defaulted on its loan and, on February 2, 1977, the parties restructured the aforesaid loans whereby SBI assumed ACC's obligation.[3] As collateral for these loans, SBI delivered to First Pennsylvania two (2) blank irrevocable stock powers,[4] each representing 750,000 shares of the debtor's common stock, and the certificates representing the 1,500,000 shares of the debtor corporation.

SBI defaulted on the restructured loan in mid-1978. Consequently, First Pennsylvania delivered the two aforementioned irrevocable stock powers to the debtor's registered office in Philadelphia and requested that the 1,500,000 shares be registered in First Pennsylvania's name.[5] Simultaneous with the transfer request, First Pennsylvania noticed and called a special meeting of the debtor's shareholders on October 31, 1980.[6]

■ A special meeting of the debtor's shareholders was conducted as called on October 31, 1980. First Pennsylvania was the only shareholder represented at the meeting. At the meeting, amended by-laws were adopted, new corporate directors were elected and a meeting of the newly elected board of directors was set for later that same day. At this later meeting, the board of directors authorized the officers to file a petition for reorganization under chapter 11 of the Code. The chapter 11 petition so authorized at the October 31 meeting was filed on November 12, 1980. Subsequently, on November 26, 1980, a motion to dismiss that petition was filed by persons purporting to be the former officers, directors and stockholders ("the former officers") of the debtor. That motion alleges that the filing of the chapter 11 petition was, for various reasons, unauthorized and that, therefore, we do not have jurisdiction to entertain the petition.[7]

## A. AUTHORITY TO CALL THE SPECIAL MEETING

The former officers repeatedly assert that only actual shareholders of the debtor—those whose names appear as such on the books of the corporation—are entitled to call a special meeting of the shareholders. In essence, the former officers contend that First Pennsylvania was not a record

2. See Exh. 1 to debtor's brief in opposition. Counsel for the debtor and counsel for the former officers and directors of the debtor have stipulated that the exhibits submitted by each party in connection with our consideration of the present motion to dismiss shall be deemed to have been admitted into evidence for purposes of the aforesaid motion only. See Stipulation filed on September 24, 1982.

3. See Exh. 8 to debtor's brief in opposition.

4. See Exh. 11 and Exh. 12 to debtor's brief in opposition.

5. See Exh. A to former officers' brief in support of motion to dismiss. However, pursuant to a restrictive legend appearing on the face of the stock certificates representing the 1,500,000 shares in question, no transfer could be made until the debtor corporation received an opin-ion from its counsel that the proposed transfer would not violate state and federal securities laws or the Bank Holding Act of 1956. For whatever reason, no such opinion was ever tendered to the debtor. In any event, by agreement of counsel reached at pre-trial conference on June 9, 1981, the issues at bench involve alleged violations of the Pennsylvania Business Corporation Law and the debtor's by-laws.

6. See Exh. B to former officers' brief in support of motion to dismiss.

7. It is a fundamental principle of law that those who act to put a corporation into bankruptcy must have the authority to do so. See Price v. Gurney, 324 U.S. 100, 65 S.Ct. 513, 89 L.Ed. 776 (1945).

shareholder, and therefore not entitled to call the special meeting, because the pledged shares were never transferred to First Pennsylvania's name on the books of the debtor corporation. As a general proposition, we agree with the debtor.[8] However, in the instant case, the former officers apparently ignore the 1976 pledge agreement entered into between First Pennsylvania and SBI wherein shares of the debtor corporation were pledged to First Pennsylvania to secure debts owed to it by certain affiliates of the debtor. The 1976 pledge agreement provides as follows:

4. Any or all shares of the Pledged Stock held by the Bank hereunder may at *any time, at the option of the Bank,* be registered in the name of the Bank or its nominee, but until the occurrence of any Event of Default specified in the Loan Agreement the Pledgor shall remain the beneficial owner of the Pledged Stock and shall retain all the incidents of such ownership thereof. At any time after the occurrence of any Event of Default specified in the Loan Agreement, the *Bank may, without notice, exercise all voting and corporate rights at any meeting of the shareholders* of the issuers of the Pledged Stock and exercise any and all rights of conversion, exchange, subscription or any other rights, privileges, or options pertaining to any shares of the Pledged Stock as if it were the absolute owner thereof, including, without limitation, the right to exchange, at its discretion, any and all of the Pledged Stock upon the merger, consolidation, reorganization, recapitalization or other adjustment of the issuers of the Pledged Stock.

5. Upon the occurrence of any *Event of Default* specified in the Loan Agreement, the *Bank shall have the right to vote the shares of Pledged Stock* and to require that all cash dividends payable with respect to any part of the Pledged Stock be paid to the Bank, as additional collateral security hereunder, until ap-

plied to the Obligations. (emphasis added).[9]

The Addendum to the 1976 pledge agreement also provides that:

1. Upon the occurrence of an event of default under the Loan Agreement of even date herewith between AAC and the Bank, SBI agrees to purchase immediately from the Bank and the Bank agrees to sell to SBI all of the Pledged Stock, as that term is defined in the Pledge Agreement, and any amendments or suppliers thereto.

2. The entire purchase price shall be paid either in cash or certified check, delivered at the closing, or through assumption by SBI of payments due by AAC to Bank under a Loan Agreement with Bank dated March 12, 1976.[10]

More importantly, First Pennsylvania received separate but identical written opinions on behalf of SBI and Aircraft from the former officers' present counsel regarding the 1976 loan transactions. The opinion letters provide in pertinent part:

6. The Agreement and the other loan documents have been duly executed and delivered by the Company and constitute *LEGAL, VALID* and *BINDING* obligations of the Company, enforceable subject to usual equitable principles, against the company in accordance with their respective terms, except as enforceability may be limited by bankruptcy, insolvency, reorganization or similar laws affecting creditors rights generally...

9. No authorization, consent, approval, license exemption of, our filing, registration with any court or governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign is or will be necessary to the valid execution, delivery and performance by the company of the agreement and the other loan documents...

12. Upon delivery to [First Pennsylvania] of certificates representing 750,000

---

8. *See, e.g., Lee v. Riefler & Sons, Inc.,* 43 F.2d 364 (M.D.Pa.1930); Fletcher, Cyclopedia of Corporations, vol. 12A, § 5656 (1972).

9. *See* Exh. 2 to debtor's brief in opposition.

10. *See* Exh. 5 to debtor's brief in opposition.

shares of the common stock of Eastern Bancorporation [the "Securities"] properly endorsed or accompanied by proper powers relating thereto, there will have been created in [First Pennsylvania's] favor a valid and perfected pledge of the securities. (emphasis added).[11]

▉ To accept the former officers' argument that First Pennsylvania could not call a special meeting because it was not a registered shareholder of the debtor would mandate that we disregard totally the 1976 and 1977 pledge agreements[12]—agreements: (1) made between First Pennsylvania and affiliates of the debtor; (2) to secure debts owing to First Pennsylvania by affiliates of the debtor; (3) collaterallized with shares of the debtor corporation; and (4) approved by the former officers' present counsel. We decline to do so and, consequently, we conclude that First Pennsylvania had the requisite authority to call the special shareholders meeting notwithstanding the fact that First Pennsylvania was not a registered stockholder as of the date of that special meeting.

▉ Since under Pennsylvania law, a shareholder "entitled to cast at least one-fifth of the votes which all shareholders are entitled to cast at the particular meeting" can call a special meeting of the shareholders;[13] and since SBI was, in fact, a shareholder of the debtor "entitled to cast at least one-fifth of the votes…";[14] and since SBI assigned, pursuant to the aforementioned 1976 pledge agreement, all its corporate rights in the debtor corporation to First Pennsylvania, it inescapably follows, we think, that First Pennsylvania, as pledgee of all of SBI's corporate rights in the debtor, also had the authority to call a special meeting of the debtor's shareholders.

### B. ALLEGED VIOLATIONS OF THE PBCL AND THE DEBTOR'S BY-LAWS.

Philip Comerford, the debtor's purported president since 1977 and the president of SBI at the time of the 1976 and 1977 pledge agreements, testified that: (1) the debtor had not held a shareholders meeting since 1975 (N.T. Comerford 5/8/81 at 66, 67); (2) he had no specific recollection of there having been a board of directors meeting of the debtor since 1975 (N.T. Comerford 5/8/81 at 66, 67); (3) the debtor had not prepared financial statements or records of operations since 1976 (N.T. Comerford 5/8/81 at 23); (4) the debtor had not filed tax returns of any kind since 1977 (N.T. Comerford 5/8/81 at 20); and (5) the debtor's only current activities are the ownership of stock in State National Bank ("SNB") and the monitoring of litigation on some leases that

---

11. *See* Exh. 6 and Exh. 7 to debtor's brief in opposition.

12. Counsel for the debtor repeatedly asserts that the filing of the petition was unauthorized because First Pennsylvania was never a shareholder of record of the debtor. This argument addresses only one portion of what appears to be a bifurcated pledge agreement wherein First Pennsylvania contracted for two (2) different and distinct rights. First, the 1976 pledge agreement gives First Pennsylvania the right to register the pledged shares in its own name. More importantly, the agreement gives First Pennsylvania the right upon default—regardless of whether the pledged shares are registered in its own name—to exercise all voting and corporate rights of the pledgor. Counsel for the former officers has failed to explain why we should not give credence to this alternative right contracted for in the 1976 pledge agreement.

13. C. Special meetings of the shareholders may be called at any time by the president, or the board of directors, or shareholders entitled to cast at least one-fifth of the votes which all shareholders are entitled to cast at the particular meeting, or by such other officers or persons as may be provided in the articles or by-laws.
Pa.Stat.Ann. tit. 15, § 1501(C) (Purdon 1967).

14. Initially, SBI and ACC each owned 50% of the debtor's outstanding stock totalling 1,500,-000 shares. Later 750,000 additional shares were issued to Capital First. Thereafter, certain of the holders of the debtor's debentures exercised warrants thereunder and purchased 1,800 shares of the debtor's common stock. SBI eventually became owners of 2,250,000 shares of the debtor's stock. *See* debtor's brief in opposition, p. 9 n. 4. This explanation of the debtor's shareholder distribution was uncontroverted by the former officers.

are being collected by various attorneys (N.T. Comerford 5/8/81 at 16). Against this history of disregard for corporate formality,[15] the former officers ask that we "uphold the Pennsylvania Business Corporation Law and Eastern's (the debtor's) by-laws." We will, of course, uphold the PBCL, but we cannot, in light of the present record, give force and effect to the debtor's "by-laws."

The Pennsylvania Superior Court has stated that "the rules with reference to special meetings, the validity of the business transacted, and the necessity of notice like many other rules respecting mode of corporate action may be overcome by proof of contrary custom or usage on the part of the directors." *McCay v. Luzerne & Carbon County Motor Transit Co.,* 125 Pa.Super. 217, 222, 189 A. 772, 774 (1937). In addition, the court, in *Steinberg v. American Bantam Car Co.,* 76 F.Supp. 426 (W.D. Pa.1948), stated that:

[T]he Court [ ] should [not] permit, on the part of those in control of a corporation, through the reliance of technicalities or strict compliance with the provisions of law, to place [sic] a shareholder in a position where he is denied the right, due to limitations on time, to communicate or draw to the attention of all the stockhold-

ers of the corporation facts and circumstances which relate to the detailed condition of the company... *[t]his is especially true where the affairs of the corporation have been conducted in such a manner that [substantial losses have been] sustained... over a prolonged period of time.* (emphasis added). 76 F.Supp. at 436.[16]

 Nevertheless, the former officers assert that First Pennsylvania could not have voted at the October 31 shareholders meeting because, even assuming that First Pennsylvania became a shareholder of the debtor on October 24, it was not a shareholder of record at least ten (10) days before the October 31 meeting. As a general proposition, the former officers are correct.[17] However, the former officers, once again, ignore the plain words of the default provisions of the pledge agreement. To reiterate, that agreement provides that First Pennsylvania, *upon the occurrence of any event of default,* "may without notice, exercise all voting and corporate rights at meeting of the shareholders."[18] Therefore, we conclude that the 1976 pledge agreement governs over the general provisions of section 1509 of the PBCL and, therefore, we find that that section has no applicability under the present facts.[19]

---

**15.** The debtor lists additional uncontroverted violations of the PBCL and its own by-laws. *See* debtor's brief in opposition, pp. 10, 11.

**16.** *See* debtor's brief in opposition, p. 12.

**17.** * * * * * *

... Unless a record of date is fixed by the by-laws or the board of directors for the determination of shareholders entitled to receive notice of, or vote at, a shareholders' meeting, transferees of shares which are transferred on the books of the corporation within ten days next preceding the date of such meeting shall not be entitled to notice of or to vote at such meeting.

Pa.Stat.Ann. tit. 15, § 1509 (Purdon 1967).

**18.** *See* note 9 and accompanying text *supra.*

**19.** The former officers imply that because § 427 of the PBCL was repealed, the agreement between First Pennsylvania and SBI, which permits First Pennsylvania to vote SBI's stock in the debtor, is invalid. § 427 provided as follows:

As between the pledgor and the pledgee of capital stock pledged to secure a specific loan with a fixed period or periods of maturity, the right to vote shall be determined as follows: First, By the written agreement of the pledgor and pledgee. Second. In all other instances the pledgor shall be held to be the owner and entitled to the right to vote. Pa.Stat.Ann. tit. 15, § 427 (repealed in 1933). Section 427 was replaced by § 1506, which provides that:

Shares standing in the name of a trustee or other fiduciary, and shares held by an assignee for the benefit of creditors, or by a receiver, may be voted either in person or by proxy of the trustee, fiduciary, assignee or receiver. A shareholder whose shares are pledged shall be entitled to vote thereon, in person or by proxy, until the shares have been transferred on the books of the corporation to the pledgee or nominee, and thereafter the pledgee or nominee shall be entitled to vote the shares in person or by proxy. Pa.Stat.Ann. tit. 15, § 1506 (Purdon 1967). However, § 1506 does not say that voting rights cannot be determined by written agree-

■ Additionally, the former officers assert that even if First Pennyvania was entitled to call the special meeting of the shareholders, the meeting was, in any event, invalid because the debtor's secretary had sixty (60) days to set the date of the special meeting.[20] We conclude, however, that the present record warrants an abatement of the sixty day requirement imposed by section 1501(C) of the PBCL. As mentioned earlier, the debtor had not held a shareholders meeting since 1975 and the debtor's president could not recall whether there had been a meeting of the board of directors since 1975. Furthermore, its management and corporate operations were at a virtual standstill.[21] Finally, the debtor had defaulted on separate indenture obligations in addition to its affiliates' default under the First Pennsylvania pledge agreements.[22] Apparently, the default provisions of the indenture obligations gave the indenture trustee the immediate right to sell the debtor's only assets.[23] Under these circumstances, we conclude that the sixty-day requirement was unnecessary.

Finally, the former officers allege that the new directors were not validly elected because the purpose of the special shareholders meeting was not disclosed. In its notice, First Pennsylvania specifically indicated that amended by-laws would be adopted and that a new board of directors would be elected.[24] The former officers contend, however, that because First Pennsylvania formulated a plan as early as October 9, 1980 to put the debtor into bankruptcy,[25] the real purpose of the special meeting was intentionally concealed.

Our initial difficulty with this contention is that we cannot reconcile how the shareholders were never advised of the true purpose of the meeting if: (1) First Pennsylvania, representing 66.6%[26] of the debtor's shareholders pursuant to the terms of the pledge agreement, was the "perpetrator" of this alleged concealment; (2) SBI, representing 33.3% of the debtor's shareholders, was an inactive corporation;[27] and (3) the

ment between pledgor and pledgee. The section simply does not address that question.

20. * * * * * *

At any time, upon written request of any person or persons who have duly called a special meeting, it shall be the duty of the secretary to fix the date of the meeting, to be held not more than sixty days after the receipt of the request and to give due notice thereof. If the secretary shall neglect or refuse to fix the date of the meeting and give notice thereof the person or persons calling the meeting may do so.
Pa.Stat.Ann. tit. 15, § 1501(C) (Purdon 1967). *See also* art. III, § 303 of the debtor's by-laws at Exh. E to former officers' brief in support of motion to dismiss.

21. *See* note 16 *supra*. *See also* notes of testimony of Philip Comerford, 5/8/81 at 16.

22. *See* debtor's brief in opposition, p. 12.

23. At the time of the attempted transfer of the pledge shares by First Pennsylvania, the debtor's ultimate default on the indentures (secured by the pledge of 186,679 shares of SNB) was eight (8) days away. *See* debtor's brief in opposition, pp. 31, 32. This allegation is uncontradicted by the former officers. The debtor's only material asset is its ownership of 30.67% of the shares of common stock of SNB. *See* former officers' brief in support of motion to

dismiss, p. 12 n.4, wherein they state that the debtor's entire shareholdings in SNB are pledged to secure this public indenture obligation.

24. *See* Exh. C and Exh. D to former officers' brief in support of motion to dismiss.

25. *See* former officers' reply brief, p. 21.

26. As of October 24, 1980, the debtor had 2,251,800 shares of common stock outstanding. Two million two hundred fifty thousand (2,250,000) (99.9%) of those shares ·were owned by SBI and pledged to First Pennsylvania. The remaining 1,800 shares were held by unidentified debtor bondholders. Only 1,500,-000 of the pledged shares are involved in the instant case. Another 750,000 shares are pledged to First Pennsylvania's and Industrial Valley Bank's Trust Departments as co-trustees under defaulted indenture obligations of Capital First Corporation, an affiliate of the debtor. *See* debtor's brief in opposition, p. 14. The former officers do not challenge these figures. · Consequently, First Pennsylvania is a 66% "stockholder" (1,500,000 ÷ 2,251,800).

27. 750,000 ÷ 2,251,800. However, although all of SBI's stock in the debtor is pledged to First Pennsylvania, SBI, as pledgor, retains voting rights over the 750,000 shares pledged to First Pennsylvania and Industrial Valley Bank as co-

remaining shareholders, .0007%, were unknown to First Pennsylvania, as evidenced by its letter of October 24, 1980 to the Bank One Trust Company.[28]

In any event, we find it indeed significant that a special meeting called by a party representing a clear majority of the debtor's shareholders in order to elect a new board of directors would be deemed by the former officers to be not important enough to have at least one representative present at that meeting.

Given the former officers' continuing disregard of the PBCL and the debtor's bylaw, we find it ironic indeed that the former officers, in their present motion to dismiss, assert that "[i]t should go without saying that a shareholder cannot pick and choose which corporate requirements it will comply with and which requirements it will not comply with when noticing and voting at a meeting. . . ."[29]

## C. ALLEGED INADEQUACIES IN NOTICING THE SPECIAL MEETING.

In response to the former officers' argument that the new directors were not validly elected because the minority shareholders were not given notice of the special shareholders meeting, we begin by pointing out that 99.9% of the debtor's shareholders were given *actual* notice of the special meeting.[30] Documents were hand-delivered to the

debtor at its registered office in Philadelphia on October 24, 1980. Included in that package of documents were: (1) a letter to the secretary of the debtor regarding the transfer of the 1,500,000 shares; (2) a letter to the secretary of the debtor regarding notice of the special meeting; and (3) a call of the special meeting addressed to the debtor's president.[31] In addition, First Pennsylvania, on the same day, asked the indenture trustee to identify and give notice of the special meeting to some 1,800 bondholders who apparently constituted the minority shareholders of the debtor corporation.[32] Furthermore, notices of the special meeting were published in two (2) Philadelphia newspapers of general circulation.[33] Finally, notices were delivered by air freight to the debtor's secretary in Rockville, Maryland.[34]

■ In any event, the former officers' contentions concerning inadequate notice must be viewed in light of the fact that the overwhelming majority of the debtor's shareholders (99.9%)[35] received *actual* notice of the time, place and purpose of the special shareholders meeting and their shares were represented.

■ We are mindful of the United States Supreme Court's command that, if parties "are to be allowed to put their corporation into bankruptcy, they must present credentials to the bankruptcy court showing their

---

trustees of defaulted Capital First debentures. The transaction by which First Pennsylvania and Industrial Valley Bank came to hold the 750,000 shares is, according to the debtor, unrelated to the issue at bench. The co-trustees have not exercised any voting or other rights in the pledged stock. *See* debtor's brief in opposition, p. 14 n.7 and p. 57 n.12. In addition, SBI, according to the former officers, is an inactive corporation. *See* former officers' brief in support of motion to dismiss, p. 12 n.4.

**28.** 1,800 − 2,251,800. *See* Letter to Ronald Hendersen, Exh. 18 to debtor's brief in opposition.

**29.** *See* former officers' reply brief, p. 19.

**30.** Written notice of every meeting of the shareholders shall be given by, or at the direction of, the person authorized to call the meeting, to each shareholder of record entitled to vote at the meeting, at least five days prior

to the day named for the meeting, unless a greater period of notice is required elsewhere in this act in a particular case.

. . . .

Pa.Stat.Ann. tit. 15, § 1502 (Purdon 1967).

**31.** *See* Affidavit of Service, Exh. 13 to debtor's brief in opposition.

**32.** *See* Letter to Ronald Henderson, Exh. 18 to debtor's brief in opposition.

**33.** *See* Proofs of Publication, Exh. 16 and Exh. 17 to debtor's brief in opposition.

**34.** *See* Federal Express receipt, Exh. 14 to debtor's brief in opposition.

**35.** *See* Affidavit of Service on the debtor and Affidavit of Service on SBI, Exh. 13 and Exh. 15, respectively, to debtor's brief in opposition.

authority."[36] The debtor contends, alluding to the Supreme Court's instruction that "it is not enough that those who seek to speak for the corporation may have the right to obtain that authority,"[37] that because First Pennsylvania proceeded to call the special meeting as "*record holder* of 1,500,000 shares of Eastern Bancorporation common stock" and voted at the special meeting as "*record holder* of 1,500,000 shares of the corporation," First Pennsylvania did not have the authority to act as it did.

As previously demonstrated, we find that First Pennsylvania had the authority to call the special meeting and vote the pledged shares *even if* it was never a shareholder of Eastern. To deny First Pennsylvania the rights it validly contracted for with the debtor's shareholder simply because it acted as "record owner" rather than as "pledgee of all the pledgor's corporate rights" would, it seems to us, be putting form over substance and equity. In *Price, supra* note 36, the Supreme Court was not presented with a situation where those who put their corporation into bankruptcy had the authority to do so. Rather, in that case a *shareholder* filed a petition in the name of the corporation. That shareholder, obviously, did not have the authority to so file. In the instant case, however, we conclude that First Pennsylvania had the right to call the special meeting and elect new board members. In the instant case, those validly elected board members authorized the filing the chapter 11 petition. Consequently, we conclude that *Price* is not controlling under the facts of the present case. The fact simply remains tht those who put the debtor into bankruptcy in this case were, in fact, validly authorized to do so.

Based on all the above, we will dismiss the former officers' motion to dismiss.

---

**36.** *See Price v. Gurney*, 324 U.S. 100, 107, 65 S.Ct. 513, 516, 89 L.Ed. 776 (1945).

**37.** *Id.* at 106, 65 S.Ct. at 516.