**In re WINDHAM POWER LIFTS INC., Debtor.**

**Bankruptcy No. 87–02696–APG.**

United States Bankruptcy Court, M.D. Alabama.

Feb. 26, 1988.

Calvin C. Pryor, Asst. U.S. Atty., Montgomery, Ala., for Small Business Admin.

Collier H. Espy, Dothan, Ala., for debtor in possession.

## ORDER ON MOTION TO DISMISS

### (Small Business Administration)

A. POPE GORDON, Bankruptcy Judge.

The creditor, United States Small Business Administration (SBA), filed a motion to dismiss the Chapter 11 case. Opposing briefs were filed and a hearing was held on February 24, 1988. The basis of the motion is that the president of the debtor corporation lacked authority to file the Chapter 11 petition. SBA contends that the shareholders' meeting authorizing the corporation's president to file the petition was improperly held. SBA maintains that at the time of the meeting it owned all of the common stock of the debtor corporation by virtue of the debtor's default under a promissory note secured by an assignment of 100 percent of the corporation's common stock.

The debtor argues that as the pledgee of the stock SBA exercised no ownership rights and that the stockholders retained the voting rights in the pledged stock at the time the corporation was voted into Chapter 11.

This is a core proceeding under 28 U.S.C. A. § 157(b)(2)(A).

## FINDINGS OF FACT

SBA is a secured creditor by virtue of a promissory note in the amount of $300,000 executed by the president of the debtor corporation on July 31, 1985. On the same date, personal guaranties were executed by

the sole stockholders of the debtor corporation. The reverse side of the guaranties are titled "List of Collateral Securing Guaranty." In addition to certain real property, the lists include all of the capital stock of the debtor corporation.

At the time the petition was filed, the debtor corporation was in default under the promissory note. The portion of the note defining SBA's rights upon default follows:

Upon the nonpayment of the Indebtedness, or any part thereof, when due, whether by acceleration or otherwise, Holder is empowered to sell, assign, or deliver the whole or any part of the Collateral at public or private sale, without demand, advertisement or notice of the time or place of sale or of any adjournment thereof, which are hereby expressly waived. After deducting all expenses incidental to or arising from such sale or sales, Holder may apply the residue of the proceeds thereof to the payment of the Indebtedness, as it shall deem proper, returning the excess, if any, to the undersigned. The undersigned hereby waives all right of redemption or appraisement whether before or after sale. Holder is further empowered, to collect or cause to be collected or otherwise to be converted into money all or any part of the Collateral, by suit or otherwise, and to surrender, compromise, release, renew, extend, exchange, or substitute any item of the Collateral in transactions with the undersigned or any third party, irrespective of any assignment thereof by the undersigned, and without prior notice to or consent of the undersigned or any assignee. Whenever any item of the Collateral shall not be paid when due, or otherwise shall be in default, whether or not the indebtedness, or any part thereof, has become due, Holder shall have the same rights and powers with respect to such item of the Collateral as are granted in respect thereof in this paragraph in case of nonpayment of the Indebtedness, or any part thereof, when due. None of the rights, remedies, privileges, or powers of Holder expressly provided herein shall be exclusive, but each of them shall be cumulative with and in addition to every other right, remedy, privilege, and power now or hereafter existing in favor of Holder, whether at law or in equity, by statute or otherwise.

The court finds that SBA has not sold or otherwise liquidated the collateral (stock). The court further finds that SBA is not listed in the debtor's stock transfer book as a stockholder and that the stock has not been transferred to SBA on the corporation books.

## DISCUSSION OF LAW

■ SBA argues that the blank endorsement and surrender of the stock certificates was an absolute assignment of all ownership rights in the stock, including the right to vote at the shareholders' meeting. SBA contends this was a transfer of ownership and not a mere pledge of collateral. This argument is without merit.

Essential to any type of pledge is the possession of the item pledged by the lender or pledgee. *Ala. Code* § 7–9–305 (1975). Further, under *Ala. Code* § 7–8–302 (1975) an endorsement of a registered security, *i.e.,* a corporate stock certificate, is required to entitle the pledgee to the protection accorded a bona fide purchaser.

Without an endorsement, the pledgee will find himself faced with cumbersome legal formalities if a default does later occur and he wishes to foreclose upon or sell the stock.

1B *Bender's Uniform Commercial Code Service* § 1402[4].

The endorsement and surrender of the stock certificates was merely for the protection of SBA as a pledgee and was not a transfer of ownership.

This is evident in the language of the promissory note, personal guarantee, and other supporting documents. As stated earlier, the personal guaranties list the stock as "collateral." The note defines the rights of SBA upon default with respect to the "collateral." While there are admittedly references to the "assignment" of the stock, the court finds that such language merely accommodated SBA as a pledgee.

If a debt was secured, as was done here, the transaction is a mortgage or security for debt, regardless of the wording of the contract.

*Lyons v. Yielding*, 203 Ala. 682, 683, 85 So. 21 (1920).

It is clear from the evidence that the transaction was a pledge of stock as security for debt and not a transfer of ownership.

 Once it is established that the transaction was a pledge of stock as security for a debt, the only remaining issue is the determination of respective rights under the agreement.

At the hearing SBA cited *Black v. Zacharie*, 44 U.S. (3 How.) 483, 11 L.Ed. 690 (1845) as authority for the contention that SBA enjoyed all ownership rights in the stock as assignee and holder of the certificates. In *Black, supra,* the Supreme Court held that equitable ownership in pledged stock rests in the pledgee, under Louisiana law, even though no transfer was made in the corporate books.

This case offers no guidance in determining the disposition of voting rights in pledged stock under Alabama law. Indeed Justice Story states that courts are compelled to look to state law to ascertain the nature of respective rights in pledged stock.

From the nature of the stock of a corporation, which is created by and under the authority of a state, it is necessarily, like every other attributes of the corporation, to be governed by the local law of that state ...

*Black v. Zacharie,* 44 U.S. (3 How.) at 510.

Alabama law is clear on this point. The voting rights attendant with stock ownership is defined by the Alabama Business Corporation Act. *Ala.Code* § 10–2A–1 *et seq.* (1975) Section 10–2A–53(h) provides that:

A shareholder whose shares are pledged shall be entitled to vote such shares until the shares have been transferred into the name of the pledgee, and thereafter the pledgee shall be entitled to vote the shares so transferred.

In determining whether stock has been transferred to a pledgee for purposes of voting, section 10–2A–51 states that:

The original stock transfer books shall be *prima facie* evidence as to who are the shareholders entitled to ... vote ...

Some courts have held, however, that statutory definitions of stock voting rights may be abrogated by agreement between the pledgor and pledgee. *In re Eastern Bancorporation,* 23 B.R. 474 (Bankr.E.D. Pa.1982);[1] *see also,* annotation, *Right, as*

---

**1.** *In re Eastern Bancorporation, supra,* involves a fact situation inverse to the case at bar. In *Bancorporation* the creditor (pledgee), upon the debtor's (pledgor's) default, exercised its rights under the pledge agreement and delivered irrevocable stock powers to the debtor's registered office and requested that the pledged shares be registered in the creditor's name. Upon registration the creditor noticed and called a special meeting of shareholders at which the debtor corporation was voted int Chapter 11.

The debtor's former officers argued that the creditor was never listed in the stock transfer books of the debtor corporation and therefore, was not a record shareholder entitled to call the special meeting pursuant to state law.

The court held that the original pledge agreement abrogated, as between the parties, state law regarding stock voting rights. The pledge agreement provided:

Any or all shares of the Pledged Stock held by the Bank hereunder may at *any time, at the option of the Bank,* be registered in the name of the Bank or its nominee, but until the occurrence of any Event of Default specified in the Loan Agreement the Pledgor shall

remain the beneficial owner of the Pledged Stock and shall retain all the incidents of such ownership thereof. At any time after the occurrence of any Event of Default specified in the Loan Agreement, the *Bank may, without notice, exercise all voting and corporate rights at any meeting of the shareholders* of the issuers of the Pledged Stock and exercise any and all rights of conversion, exchange, subscription or any other rights, privileges, or options pertaining to any shares of the Pledged Stock as if it were the absolute owner thereof, including, without limitation, the right to exchange, at its discretion, any and all of the Pledged Stock upon the merger, consolidation, reorganization, recapitalization or other adjustment of the issuers of the Pledged Stock.

Upon the occurrence of any *Event of Default* specified in the Loan Agreement, the *Bank shall have the right to vote the shares of Pledged Stock* and to require that all cash dividends payable with respect to any part of the Pledged Stock be paid to the Bank, as additional collateral security hereunder, until applied to the Obligations.

*Between Pledgor and Pledgee, to Vote Stock,* 68 A.L.R.3d 680 (1976).

Absent clear language in the pledge agreement to the contrary, state law regarding voting rights of pledged stock controls. A debt instrument listing stock as collateral, with no special provisions providing for disposition of the attendant voting rights upon default, will generally confer upon the creditor only the right to sell or otherwise liquidate the stock.

The rights and privileges of the parties are not affected by a pledge in the same manner as by a "sale" or "purchase." The pledgor generally (1) has the right to sell the stock subject to the security interest, (2) is entitled to vote the stock, (3) has the right to receive all dividends, and (4) continues to be liable for ad valorem taxes. *See generally,* L. Jones, Collateral Securities and Pledges §§ 1, 176a, 441, 602 (3d ed. 1912).

The pledgee, on the other hand, has "no general property right in the thing pledged, but only a right, upon default, to sell in satisfaction of the pledgor's obligation." *Pauly v. State Loan & Trust Company,* 165 U.S. 606, 622, 17 S.Ct. 465, 471, 41 L.Ed. 844 (1897). The pledgee does not participate in any appreciation of the stock, has none of the rights normally accorded shareholders, and has no right to sell the collateral for its own account. Indeed, its relationship is of a fiduciary character, *Easton v. German American Bank,* 127 U.S. 532, 537, 8 S.Ct. 1297 [1299], 32 L.Ed. 210 (1888), and it must account for all proceeds in excess of the debt and profits accruing as a result of possession of the collateral. Restatement of Security § 27 (1941).

*National Bank of Commerce of Dallas v. All American Assurance Company,* 583 F.2d 1295, 1300 (5th Cir.1978); Binding as precedent in this circuit. *Bonner v. City of Pritchard,* 661 F.2d 1206 (11th Cir.1981) (*en banc*).

SBA also cites *Moores v. Citizens National Bank of Piqua,* 111 U.S. 156, 4 S.Ct. 345, 28 L.Ed. 385 (1883) which holds that: [A] certificate of stock in a corporation, under the corporate seal and signed by the officers authorized to issue certificates, estops the corporation to deny its validity, as against one who takes it for value and with no knowledge or notice of any fact tending to show that it has been irregularly issued.

*Moores v. Citizens National Bank of Piqua,* 111 U.S. at 165, 4 S.Ct. at 349.

SBA attaches great importance to this holding, however; the court fails to find it helpful. Neither party challenges the validity of the stock certificates now in possession of SBA. The only issue is: who had the right to vote the shares at the special meeting of shareholders.

The conclusion is that the pledge agreement between the debtor and SBA made no special provision regarding the disposition of the pledged stock voting rights upon the debtor's default. The only right accorded SBA under the agreement was the right to sell or otherwise liquidate the collateral upon default, a right SBA chose not to exercise. Under Alabama law and in accord with *National Bank of Commerce, supra,* the pledgors enjoyed all voting rights at the time of the shareholder's meeting authorizing the filing of the Chapter 11 petition. Accordingly, it is

ORDERED that the motion to dismiss is DENIED.